## Fannie E. Farrar, Fannie E. Farrar, Jr., and Emeline P. Farrar, v. Pneumatic Gate Co.

1. CORPORATIONS—*Voluntary Contributions by Stockholders.*—A company had no capital stock but was supported by funds furnished by certain stockholders as required for the development of the enterprise; afterward A, one of the stockholders so contributing, determined to resign his position as president and director and did so, making no claim upon anybody representing the company, before his death three years later. Suit was begun on behalf of his estate for the amount subscribed by him. *Held*, that the moneys paid by A and the others were in the nature of consentable *pro rata* assessments on their stock, and were in fact voluntary contributions to the company in betterment of its stock; and were not to be treated as loans to or debts by the company.

2. LIMITATIONS—*Annual Statements of a Corporation.*—Annual statements of a corporation are not promises to pay and are not sufficient to prevent the running of the statute of limitations.

Assumpsit.—Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1899. Affirmed. Opinion filed May 4, 1900.

WILLARD & EVANS and A. HUMMELAND, attorneys for appellants.

WILLIAM J. DONLIN, attorney for appellee.

MR. JUSTICE SHEPARD delivered the opinion of the court.

The appellants, as distributees of the estate of Arthur Farrar, deceased, brought suit in assumpsit to recover a balance of $4,017.19 claimed to be due from the appellee company for moneys disbursed by said Arthur Farrar for the appellee in the course of its business.

A jury was waived, and the cause being submitted to the court a finding of the issues in favor of the defendant (appellee) was made, and judgment rendered accordingly.

It is not disputed that the amount claimed by appellants appears upon appellee's ledger, if balanced, as standing to the credit of said Farrar; nor that in numerous annual

reports and trial balances made by the appellee, such amount is shown as one of its liabilities.

The defense in such aspect of the case is, that the various sums of money aggregating that amount and paid out in many items during a period of several years, were not loans made by Farrar, but were voluntary contributions or assessments advanced by him to relieve appellee from pecuniary embarrassment, and to promote its interests and for the betterment of its stock, while he, Farrar, was a stockholder, one of the directors and president of the appellee corporation; and that there was never any agreement or promise to pay back or return such moneys.

It appears that the appellee company is an Illinois corporation organized for the manufacture and sale of pneumatic gates for use at railway crossings. The inference is that its property consists mostly in patents.

Of its capital stock of 20,000 shares, Farrar was the owner of 3,775 shares, one Cass of 7,100 shares, and one Elliott of 4,100 shares. The remaining shares—about 5,000 —were held in varying amounts by a half dozen or so of other persons, two of whom, with Farrar, Cass and Elliott, constituted the board of directors, the three last named being the active managers of the business.

From the first, Farrar was president, and Cass vice-president, and later on, Elliott became treasurer, and at one time he seems to have been manager.

The company does not appear to have ever had any cash capital and as described by one or more of the witnesses, it got along by Farrar, Cass and Elliott taking turns in acting as treasurer and furnishing funds as required for the development of the enterprise. No bank account was kept by the company, but whichever one of said three persons acted for the time being, as treasurer, received all money that came in and paid all bills; and whenever it was necessary in order to preserve equality of advances as between themselves, proportionally to the shares of stock held by each, the other two would pay to him their proper share, or he would pay over to them, as the case might require.

This kind of arrangement between Farrar, Cass and Elliott appears to have existed from the first and lasted as long as Farrar continued to be active in the affairs of the company—a period of five or six years. In 1890, Farrar determined to resign his position as president and director and did so, and announced his intention "not to put up any more money." At that time the difference between his receipts and payments was the sum claimed in this suit, and it always afterward remained the same.

The various sums so received and paid out by the three parties, Farrar, Cass and Elliott, were entered upon the books of the company in individual accounts kept in their several names, and so far as shown by the record each one of them seems to have contributed ratably with the others in proportion to the amount of stock held by each. Farrar lived more than three years after he ceased to be actively interested in the corporation, and it does not appear that he at any time made any claim upon anybody representing the appellee for a return of any part of the money he had put into its affairs. The claim is first made on behalf of his estate, and the evidence to sustain it is principally based upon the books of account and the annual reports of the company, wherein the amounts paid in by him appear as liabilities of the company to him.

It may be said that in the same manner, liabilities of the company to Cass and Elliott for $7,260.56 and $4,984.95, respectively, appear.

With all these matters before the trial court, aided by the testimony of witnesses as to what the arrangement was under which Farrar and the other parties put their money into the business, we are unable to say that the court did not rightly determine that the moneys sued for were voluntary contributions by Farrar without intention of getting them back, unless the company should succeed and be able to pay them back.

We do not regard the mere method of bookkeeping that was resorted to in order to preserve the record of the transactions, as proving by itself anything against the theory

Farrar v. Pneumatic Gate Co.

of voluntary contribution. It was entirely proper that the books of the company should show the transactions, but it was not material by what method the accounts were kept. Even if it be granted that the books unexplained do, in the manner the accounts were kept, show a *prima facie* indebtedness of the company, yet if in point of fact no indebtedness existed, none could be created by mere entries on the books.

The clear weight of the evidence sustains the conclusion of the trial judge, which by necessary intendment he must have arrived at, that the moneys paid by Farrar and the others were in the nature of consentable *pro rata* assessments on their stock—were, in fact, voluntary contributions to the company in betterment of the stock of the company, and were not to be treated as loans to or debts by the company. Under such a state of facts appellants were properly denied the right to recover.

The case of Bidwell v. Pittsburgh, O. & E. L. Pass. R. R. Co., 114 Pa. St. 535, is much in point as to the effect of voluntary contributions by stockholders under similar circumstances, and approves itself to us.

We do not regard the fact that appears in that case, that there the three contributing stockholders owned all the stock of the company, as in any important sense changing the principle or effect of voluntary contributions.

The circumstance that Farrar, Cass and Elliott owned only about three quarters of the entire capital stock, might make it less probable that they would enter into an arrangement to carry the company along by voluntary contributions on their part, unaided by the other stockholders, but it would not change the effect of an agreement to do so and the doing of it.

Nor does the fact that the contributors hoped the company would be able to repay such contributions, change the character of the transaction from a contribution to a loan.

We see no reason to disagree with the facts found by the trial court.

The judgment of the Circuit Court is affirmed.

Additional opinion by MR. PRESIDING JUSTICE HORTON:

It is contended by counsel for appellee that the claim of appellants is barred under the statute of limitations. That statute is that to recover in actions like this the suit "shall be commenced within five years next after the cause of action accrued."

To meet this contention counsel for appellants insist that the annual statements of appellee are a promise sufficient to prevent the running of the statute of limitation. Also that said Cass and said Elliott and one Mason, secretary of appellee, had severally made such statements as would prevent the running of said statute.

We can not regard said annual statements as amounting to a promise to pay. There were no entries made in the Farrar account in said books at the times said statements were made. Such statements are usually prepared by a bookkeeper. He has no discretion as to what shall be in the statement. The account was never balanced in the books. Any one making up such a statement must necessarily include all items in the books. It does not follow that if an entry be not made in an account at the end of five years, balancing or canceling such account, that the statute of limitations can not be successfully interposed. Taking off a statement from the books and giving a copy thereof to a stockholder does not change the duties, obligations or liabilities of any of the parties. That does not amount to a promise. Neither is it a waiver of the statute of limitations. It has no greater effect than would the reading of the account to a party from the books themselves.

It is also contended by counsel for appellants that after the death of said Farrar such statements were made by persons connected with appellee company as remove the question of the statute of limitations.

It does not seem that any injustice results from the fact that the statute of limitations has run against this claim. Mr. Farrar became connected with the company in 1884. He was elected a director and president of the company that year and continued to hold such positions and to take

an active part in the management of its business affairs until July 10, 1890, when he tendered his resignation. During all that period the three parties named were from time to time contributing money to the company. Mr. Farrar frequently examined the books to see if the other two were contributing their share in proportion to the amount of stock they held. The company had no bank account. Each one made collections and paid bills. The first and only time Mr. Farrar's account was ever balanced was October 1, 1885. On one occasion he is charged with money received from Mr. Cass and on numerous occasions he is credited with money paid to Mr. Cass and Mr. Elliott severally. By the last item in his account which was a short time before he resigned, Mr. Farrar is credited with money paid to Mr. Elliott. Just prior to the date of his resignation Mr. Farrar said to the bookkeeper that he was not going to put up any more money; that if Mr. Elliott and Mr. Cass wanted to do so they could, but he was going out of the company. Mr. Farrar died November 2, 1893. It does not appear that he ever requested payment of the amount of the excess of the credits over the debits in his account in said books, or that he ever in any manner claimed to his associates that there was anything due to him.

The statute of limitations is a bar to recovery in this case, and I concur in the foregoing opinion by Mr. Justice Shepard.