## James A. McCorkle v. John W. Richards, et al.

1. CONSTRUCTIVE MORTGAGE—*when absolute deed is a.* Held, from the particular facts of this case, that a deed absolute upon its face was, in fact, given as security, and a right to redeem therefrom is recognized.

2. PROMISSORY NOTE—*when party not entitled to credit on account of.* In an accounting in equity it is error to allow one party credit for the supposed amount of a promissory note claimed to be owned by him where such note is not produced in evidence, its amount not shown, and the title thereto not established to be in the party so claiming to own the same.

Proceeding to redeem from alleged constructive mortgage. Error to the Circuit Court of Effingham County; the Hon. WILLIAM M. FARMER, Judge, presiding. Heard in this court at the August term, 1903. Reversed in part, affirmed in part, and remanded with directions.

W. S. HOLMES, for plaintiff in error; WOOD BROS., of counsel.

A. C. HARRAH, S. F. GILMORE and RINEHART & RINEHART, for defendants in error.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a bill in chancery by John W. Richards and Rosa M., his wife, against James A. McCorkle, alleging that the said Richards and wife were the owners of certain lands in Effingham County, Illinois, subject to indebtedness thereinafter described; that on October 24, 1894, said John W. Richards, being indebted to one Junia Richards, executed and delivered to her four certain promissory notes of $100 each, with said James A. McCorkle and S. N. McCorkle as sureties; that on November 1, 1894, to indemnify his said sureties, Richards gave them a mortgage on a portion of said lands, which mortgage was recorded on May 16, 1896; that on March 21, 1895, Richards and his wife mortgaged all of the lands above described to one Kelly, to secure a loan of $2,000, and the mortgage was recorded March 25, 1895; that afterwards Kelly assigned said mortgage and the notes secured thereby to Legrand Burrell, who at the October term, 1896, of the Effingham Cir-

cuit Court foreclosed the same and afterwards obtained a master's deed to the premises; that prior to the time Burrell filed his bill to foreclose the mortgage the said James A. McCorkle had, as a surety, paid on said notes to Junia M. Richards the sum of $375.55; that James A. McCorkle being desirous of having said premises redeemed from the sale to Burrell so as to make his mortgage available, as security for the money paid out by him for Richards, agreed with Richards and wife if they would vest him or cause him to be vested with the title to said premises, he would obtain a loan on the same and raise sufficient money to redeem from Burrell; that he would hold the premises as security and reinvest them with the title after he was fully reimbursed the amount paid by him as security for Richards and such other money as was necessarily advanced by him to make said redemption; that at the March term, 1899, of said court, McCorkle obtained a decree authorizing him to redeem said premises from Burrell, upon the payment of $2,600 within ninety days; that McCorkle redeemed from Burrell and obtained a master's deed to the premises on July 1, 1899; that said master's deed was made in pursuance of the agreement between McCorkle and Richards above set forth, for the purpose of indemnifying McCorkle against loss by reason of any sum of money paid out for Richards, and not for the purpose of vesting him with the absolute title to said premises; that Richards and wife continued to remain in the sole and exclusive possession of said premises, and that they are still in the possession of and occupying the same as their homestead.

It was further alleged that at the time of the payments made by McCorkle as surety for John W. Richards, McCorkle was indebted to Richards in the sum of $500 for services rendered by Richards to McCorkle, and for the balance due on a certain note made by McCorkle to Letitia S. Richards, for $487 and interest, which belonged to John W. Richards; that the payments made by McCorkle on the notes given by Richards, as aforesaid, were in fact and in equity, payments of an indebtedness which McCorkle owed to Richards.

The bill asked that the master's deed be construed to be in fact a mortgage upon said premises, or that the title of McCorkle by virtue thereof, be decreed to be held in trust by McCorkle to secure him for such amount as he had paid out or assumed for the benefit of Richards; that an accounting be had between the parties; that the court decree the title to said premises to be vested in fee simple in Richards and wife, subject to the mortgage lien in favor of McCorkle, above mentioned; that a temporary injunction issue, restraining McCorkle from taking or attempting to take possession of said premises, until the hearing, and that upon the hearing McCorkle be perpetually enjoined from disposing of the title to said premises or taking possession thereof.

A temporary injunction was issued in accordance with the prayer of the bill and afterwards McCorkle answered the bill, alleging that he was the owner in fee of the premises in question; that defendants in error held the same as tenants under him, and denying he secured the master's deed to the premises by virtue of any agreement with Richards and his wife or either of them, as charged in the bill. The answer sets up the Statute of Frauds as a defense to the allegation of the bill that the conveyance to McCorkle was in trust, alleges that McCorkle is not now and never has been the owner or in control or possession of the Letitia Richards note and also sets up the Statute of Limitations as a defense to said note and the claim made by Richards for services said to have been rendered McCorkle.

The court upon the hearing found the allegations of the amended bill to be true as therein stated; that in accordance with an agreement made between McCorkle and complainants, prior to his redemption of the premises, McCorkle held the same as security for the amount of the redemption mentioned, and also for the money due him from John W. Richards, and that the master's deed was in fact a mortgage; that the amount due McCorkle was $3,298.98; and ordered that complainants or either of them be allowed to redeem said premises, upon complying with the conditions named

in the decree. Thereafter, said Rosa M. Richards redeemed the premises, and received a deed therefor from a special commissioner appointed by the court, as provided by the decree, and he made report of the proceeding to the court, which was thereupon approved. McCorkle brings the case here by writ of error, complaining that the court erred (1) in finding that the deed in question was a mortgage and permitting redemption therefrom, and (2) in allowing defendants in error credit for the amount claimed by Richards to be due him for services and on the Letitia Richards note.

The proofs in the case show that Burrell had foreclosed his mortgage, obtained a deed and leased the premises to John W. Richards. Steps were being taken by Burrell to remove defendant in error from the premises, when Richards wrote McCorkle, making certain suggestions which afterwards resulted in the filing of the bill by McCorkle, to redeem from the sale under the Burrell mortgage. In answer to Richards' letter, McCorkle wrote him, "You go and see Holmes; talk the matter over with him. You fellows are there on the ground and will know better what to do. Of course I am not able to lose the money and if you should lose your place, it will be hard on you to pay it, and the best way is to make it out of the land or Burrell, if it can be done.".

After the entry of the decree permitting McCorkle to redeem, McCorkle gave Richards the privilege of raising the money upon the land to pay Burrell, agreeing for himself to take a second mortgage for the amount due him. This Richards was not able to do and McCorkle wrote him, "I say now as before, you raise a part of the money and I will furnish the balance; you pay me back as you get able. As you make it on the farm, pay me as much as one-third that the place makes." Afterwards, on June 15, 1899, he wrote, "I am afraid Burrell will get it for $2,600; all I want is my money with interest, and of course what you could have got out of the land you could have had." On July 27, 1889, after McCorkle obtained the deed from the master, he wrote a letter to Richards, inclosing a lease to the premises, with a statement of what it cost to redeem and said, " Do you

think you will be able to get the money to redeem the land ?"

Richards testified that in October, 1900, McCorkle told him, speaking of certain letters written to the latter by Mr. Holmes, " I never authorized Mr. Holmes to say to you people that I would sell the farm, for I did not consider it was mine to sell. I don't want a cent off of you, all I want is my money back;" that McCorkle also told him he was to have the title back as soon as he paid him, McCorkle, what the latter had invested; that he had made a deed to Rosa Richards, and had sent it to Holmes. Some of the statements made by Richards were contradicted by Mc-Corkle, and others were not. McCorkle insists that when it became necessary to raise all the money to make the re-demption of the premises himself, all negotiations between him and Richards ceased. He admits, however, that after he got his deed, he offered to sell the premises to defendant in error, for what they cost him and even less, and twice had a deed ready for delivery to Rosa M. Richards. McCorkle retained the note of Richards, which he had paid off, and the mortgage to secure the same, in his own possession.

The mother of McCorkle and the first wife of Richards were sisters, and it is evident that the two men had inti-mate business relations. The question whether the master's deed taken by McCorkle was or was not, as between him and defendants in error, really a mortgage, was a very close one upon the evidence in this case, and we do not feel justified by the proofs in holding that the finding of the court who tried the case and had so much better opportu-nity of determining the credibility of the witnesses than we, that the deed was really a mortgage, should not be sustained.

The decree must however be reversed for another reason. The court in the statement of account between the par-ties allowed the defendants in error credit for the amount of the note given by McCorkle to Letitia S. Richards, the first wife of John W. Richards. Mrs. Richards died Novem-ber 1, 1890, leaving her husband and two children surviving

her. The note did not appear to have been either in the possession or under the control of John W. Richards and was not produced on the trial. It is not even certain from the evidence, what the amount of it was. Nothing appeared in the evidence to show Richards was ever, at any time, entitled to the note, and we see no reason why he should be given credit for the amount of the same and interest, in his account against McCorkle.

The decree will be reversed with directions to the court below to restate the account between the parties, by leaving out the credit given defendants in error on account of Letitia S. Richards' note, and will in other all respects be affirmed.

*Reversed in part, affirmed in part, and remanded with directions.*