THE STATE OF MISSOURI EX REL. JOHN P. GORDON v. FRANCIS TRIMBLE ET AL., Judges of Kansas City Court of Appeals.—300 S. W. 475.

Court en Banc, December 2, 1927.

342

*Dumm & Cook, D. W. Shackleford* and *Paul Barnett* for relator.

*Ira H. Lohman* for respondents.

344

BLAIR, J. (in Division Two).—This is an original proceeding in *certiorari*, whereby relator seeks to quash the opinion of the Kansas City Court of Appeals in the case of First National Bank of Mission, Texas, Respondent, v. John P. Gordon, Appellant, lately pending before respondents and wherein respondents affirmed the judgment of the Circuit Court of Cole County.

The following facts are gleaned from the opinion of respondents: The First National Bank of Mission, Texas (hereafter referred to as ".bank"), sued relator upon a promissory note for $3500, together with interest thereon and attorney fees. No defense was made to such note, except by way of counterclaim. The trial court directed a verdict for the bank against relator and a verdict for $4,414.61 was accordingly returned in favor of the bank on its petition. No contention of any conflict is made in respect to the opinion in so far as it affirmed the judgment on the bank's note. The contention of conflict grows out of .the affirmance of the judgment on relator's counterclaim.

Relator's answer admitted the execution of the note. He set up a counterclaim based upon the alleged facts that, on or about October 7, 1920, and at the request of the bank and for its use, relator deposited in the First National Bank of Brownsville, Texas, the sum of $9,889.70, which the bank promised to repay to relator within a reasonable time; that the bank drew out and applied said deposit to its own use. Six payments are set out as credits upon the note given by relator to the Brownsville bank, leaving a balance of $5,743.49 alleged to be still due relator because of such advancement.

The bank's reply denied the foregoing transaction and pleaded the Texas statute of limitations. That statute seems to have dropped out of the case or, at least, is not further considered in the opinion. The reply, also by way of answer to relator's counterclaim, further alleged that the bank was organized under the laws of the United States and that relator was a stockholder, director and the president of such bank, and, while such director and president, relator allowed

and permitted excessive loans and overdrafts, in violation of the laws of the United States, and thereby became liable to the bank on account thereof. "And that if he made any payment it was voluntary, and without any express or implied promise of reimbursement, and was made for the purpose of protecting his stock in said bank and to prevent the same from being taken in charge by the Comptroller of Currency of the United States; that any such payment was voluntary and made with the distinct understanding that he was not to be reimbursed therefor."

By way of further answer to relator's counterclaim, the bank alleged: "That defendant never made any claim under the facts alleged in his counterclaim until after the institution of this suit; but that he stood by, well knowing all the facts, and afterwards sold a large portion of his stock in the plaintiff bank, and by reason of advancements made to the bank by other directors, he sold same at an increased value and accepted and received the benefits of the money so paid by other directors and stockholders to protect the bank and prevent its being closed; and that he was thereby estopped from setting up his counterclaim."

The opinion of respondents shows that relator and his wife purchased ninety shares of the stock of the bank and that relator thereupon became president of the bank. Its capital stock was $25,000. One Sprowl owed the bank $32,000 when relator became its president. At one time thereafter this indebtedness had mounted to $75,000 or $80,000. The advancements made to Sprowl after relator became president of the bank were made by the cashier and not by relator personally. When relator learned the situation in respect to the Sprowl account, he called a meeting of the board of directors and, under its direction, watched the account until it was reduced by collections to approximately $18,000. Relator then closed down on the account and took assignments from Sprowl in his own name as trustee for the bank. This occurred July 9 and 10, 1920.

On October 6, 1920, the bank received a visit from one Thompson, a national bank examiner. Thompson insisted that the Sprowl overdrafts be taken out of the bank. Thereupon the directors, each in proportion to the stock held by him, executed their notes to the First National Bank of Brownsville, Texas, to take up the Sprowl overdraft, which was then in excess of $18,000. Relator's note was accordingly executed for $9,889.70.

It appears that the credits given to the bank by relator in his counterclaim were in fact collections made from time to time on the Sprowl assignments and credited *pro rata* upon the notes of the directors. Relator testified in substance that he and the other directors put up the money secured by the notes rather than to have the

national bank examiner close the bank. He said he put up his money with the understanding that the bank was to repay the directors whatever balance on the notes the Sprowl assignments failed to pay off.

The trial court sustained a demurrer to the evidence in support of relator's counterclaim, and judgment was entered accordingly, together with judgment against relator in the sum of $4,414.61, upon the note pleaded in the bank's petition. From this judgment relator appealed to the Kansas City Court of Appeals. That court affirmed the judgment. After unsuccessfully moving for a rehearing in that court, relator applied for and secured our writ of *certiorari*, upon the ground that the opinion of respondents, in affirming the judgment of the trial court, conflicts with certain decisions of this court. That court has complied with our writ by certifying up the record before it.

Among other conflicts urged here, relator contends that the opinion of respondents conflicts with American Brewing Company v. St. Louis, 209 Mo. 600, because "the Kansas City Court of Appeals, in said opinion, held that where stockholders voluntarily assessed themselves to relieve the corporation from pecuniary embarrassment, or for the betterment of their stock, such advancements are not debts, but assets of the corporation, and that this is a sufficient consideration accruing to the defendant. In so holding, the Kansas City Court of Appeals failed to follow the last controlling decision of the Supreme Court of Missouri."

The portion of respondents' opinion covering this point is as follows:

"It is further insisted by plaintiff that the counterclaim was properly withheld from the consideration of the jury, not only on the ground that it was a voluntary payment, but because the payment was made by defendant for the purpose of saving his financial interest in the bank, and this constituted a good consideration for his action.

"The rule is that where stockholders voluntarily assess themselves to relieve the corporation from pecuniary embarrassment, or for the betterment of their stock, such advancements are not debts, but assets of the corporation. [Brodrick v. Brown, 69 Fed. 497, et seq.; Bidwell v. Ry. Co., 6 Atl. 729; Trust & Banking Co. v. Irwin, 138 La. 335; First National Bank v. Henry, 202 S. W. 282.]"

The cases cited by respondents undoubtedly support the general proposition that "where stockholders voluntarily assessed themselves to relieve the corporation from pecuniary embarrassment; or for the betterment of their stock, such advancements are not debts, but assets of the corporation." But it does not follow that every payment of money to a financially embarrassed corporation by one

or all of its stockholders or directors is paid to it without any agreement for its repayment or that a stockholder cannot make a payment under such an agreement which may be recovered.

By affirming the action of the trial court in sustaining the demurrer to the evidence offered in support of relator's counterclaim, respondents in effect held that there was no sufficient evidence of an agreement for the repayment of the money advanced to the bank by relator and the other directors. To hold thus is squarely in the face of the record as shown by respondents' opinion, which shows that relator testified: "A. I chose to put up the money; I was putting up this money with the understanding that the bank was to repay us anything these assignments failed to liquidate. Q. Was it entered on the board of director's minutes? A. No, sir; Mr. Thompson said, 'Don't make a record of any of this; it will get out and hurt your bank.' "

We also quote from the opinion further:

"Defendant testified that when the bank examiner met with the directors, the examiner suggested that the best way to handle the Sprowl matter was for the directors to put the money up and as the assignments were realized on, the credits could be given to the directors in proportion to the amount of money placed by each. The witness was asked:

" 'Q. In case of failure to realize sufficient money to take up this $18,000 indebtedness, what was to be done? A. Someone asked him the question and he said: "The bank can reimburse you gentlemen afterward." '

"This statement was objected to upon the grounds that a national bank can make no such agreement as that, but the court overruled the objection."

In stating the testimony of witness Bishop, respondents said:

"The witness testified that he did not recollect any definite arrangement among the directors as to what was to be done toward reimbursing them in the event the Sprowl claims were not sufficient to meet the advancements made by them, but he understood that in the event the money derived from said claims was insufficient to reimburse the directors for their advancements the plaintiff bank or its shareholders owed him an obligation to reimburse him."

Even if the payments of assessments by stockholders and directors to a corporation to relieve its financial embarrassment, without the showing of an agreement to the contrary, must be regarded as assets of the corporation and not as debts, it does not follow that such payments may not be made under a valid and binding agreement that they are to constitute debts of the corporation which should be repaid. In applying this rule to the facts stated in their opinion and holding that relator made no case for submission of his counterclaim

to the jury, respondents ignored the testimony of relator and Bishop tending to show an agreement to repay and clearly contravened the numerous decisions of this court holding that, upon a demurrer to the evidence, the testimony offered in support of the issues tendered by the pleadings must be taken as true, together with every reasonable inference which may legitimately be drawn therefrom. This rule is so general and so well established that citation of authority is scarcely justified, but see the recent cases of Burton v. Holman, 288 Mo. 70; Burtch v. Wabash Railroad Co. (Mo. Sup.), 236 S. W. 338; Keppler v. Wells (Mo. Sup.), 238 S. W. 425; Lindsay v. Shaner, 291 Mo. 297, and Evans v. General Explosives Co., 293 Mo. 364.

Respondents did not discuss this rule, but their opinion approving the action of the trial court in sustaining the demurrer to the evidence offered in support of relator's counterclaim necessarily involved such a ruling. In State ex rel. Boeving v. Cox (Mo. Sup.), 276 S. W. 869, we held that a court of appeals will be regarded as having decided a question consistently with the judgment rendered, whether or not it discussed the question in its opinion, if the decision of such question was necessarily involved and must have been decided consistently with the judgment before the conclusion reached could be logically and reasonably reached.

Respondents could not have affirmed the action of the trial court in sustaining the bank's demurrer to the evidence on relator's counterclaim without in fact holding that relator was not entitled to have his testimony of an agreement to repay taken as true and that he was not entitled to the benefit of every inference legitimately to be drawn therefrom.

Even if relator has not specifically assigned this conflict of opinion, it is our clear duty to notice it when its existence comes to our attention. [State ex rel. Missouri G. & E. Co. v. Trimble, 307 Mo. l. c. 552; State ex rel. Shawhan v. Ellison, 273 Mo. l. c. 228; State ex rel. Vulgamott v. Trimble, 300 Mo. l. c. 101.]

Relator makes complaint of several other alleged conflicts, but they need not be noticed, for the reason that our ruling that respondents contravened decisions of this court in sustaining the trial court in giving a demurrer to the evidence offered in support of relator's counterclaim makes the reversal of the judgment of the trial court the only judgment which respondents could properly render. It is unnecessary to consider such other alleged conflicts.

Because of the conflict above pointed out, the opinion and judgment of respondents should be quashed. It is so ordered.

All concur.

PER CURIAM (in Court en Banc) :—It is urged in brief and argument that the divisional opinion should not be adopted because, un-

der Sections 5200 and 5239, Revised Statutes of United States 1878, "directors of national banks who permit loans above ten per cent of the capital and surplus to any one person are personally liable to the bank for the loan."

Section 5200 limits the liabilities to the bank of any one person, firm or company for money borrowed to ten per cent of the capital and unimpaired surplus of the bank. But, by subdivision one of the proviso found in said section, "the discount of bills of exchange drawn in good faith against actually existing values, including drafts and bills of exchange, secured by shipping documents conveying or securing title to goods shipped, . . . shall not be considered as money borrowed within the meaning of this section."

It appears from respondents' opinion that the Sprowl account "was made up of drafts with bills of lading attached, on which there had been advanced to Mr. Sprowl, a dealer and shipper of produce, said amount." The Sprowl indebtedness was of the class exempted by the proviso of Section 5200 above quoted. The bank was therefore not limited as to such indebtedness to ten per cent of its capital and unimpaired surplus and the act of relator in knowingly permitting the same to exceed ten per cent of the capital and surplus, if he did knowingly do so, was not such a violation of Section 5200 as made relator personally liable under Section 5239, Revised Statutes of United States 1878. Hence, it may not be said as a matter of law, in view of such sections of the Federal statutes, that relator could not make the defense that there was an agreement between the bank and the directors to repay the money advanced by relator and the other directors.

It is further urged that the divisional opinion should not be adopted because relator was liable, under Section 5151, Revised Statutes of United States 1878, to an assessment of $100 per share and because relator testified that he voluntarily put up the money to keep the bank from being closed. Respondents' opinion discloses that relator testified in the same connection to an agreement or understanding that the money advanced should be repaid.

The liability of shareholders of national banks, to the extent of the par value of their stock, in addition to the amount invested in such shares, provided for by Section 5151, is limited to contracts, debts and engagements *of* such banking association. Such liability apparently does not become fixed as to uncollectible debts due *to* such banking association until such uncollectible debts so impair the bank's capital stock and surplus that its assets will not satisfy its depositors and other creditors and it becomes necessary to call upon the shareholders to make good the deficiency up to the par value of the shares held by them.

There is nothing in any of the provisions of the Federal statutes relied upon by respondents which denies the right of the shareholder

in a national bank to make a valid and enforceable agreement with such bank that money, advanced by him to the bank to take up undesirable paper of the sort exempted from the provisions of Section 5200, shall be repaid. The opinion of respondents shows that there was testimony tending to prove just that sort of an agreement. The jury had the right and duty to pass upon the truth of such testimony.

In affirming the action of the trial court in taking the case from the jury, the opinion of respondents conflicts with opinions of this court, as pointed out in the divisional opinion.

With this modification, the divisional opinion is adopted as the opinion of the Court en Banc.