NORMAN REESE *et al.*, Plaintiffs-Appellees, *v.* ALICE S. MELAHN, Ex'rx of the Last Will and Testament of Elmer M. Melahn, a/k/a E. M. Melahn, *et al.*, Defendants-Appellants.

Second District (1st Division)   No. 75-68

Opinion filed February 4, 1977.

McDermott, Will & Emery, and Carl N. Graf, Jr., both of Chicago, for appellants.

Diver, Ridge, Brydges & Bollman, of Waukegan, for appellees.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:
This case was before this court in 1 Ill. App. 3d 63 and in that case we reversed the trial court. An appeal was taken and the Supreme Court (53 Ill. 2d 508) affirmed the trial court's judgment finding a joint venture and ordering an accounting and transfer of net proceeds and a 20% interest in the defendant corporation, and remanded the case to the trial court. Defendants have now appealed from a subsequent judgment of the circuit court of Lake County which determined the amount to which the plaintiffs were entitled. The basic issues on this appeal are: (1) whether a party entitled to 20% of a joint venture is entitled to 20% of any moneys or properties held by the joint venture regardless of whether they represent profits, capital investments, advances or loans; (2) whether the decree of the trial court in the first trial that the plaintiffs were entitled to 20% of Highland Memorial Park, Inc., "its assets, income and real estate and any other property of any other kind, acquired by the venture of the parties,"

entitled the plaintiffs, who did not contribute any capital, to 20% of the capital investment and advances and loans made.

We rule that while the plaintiffs would normally be entitled to only 20% of the profits, that under the ruling of the first trial court, they are also entitled to 20% of the stock in the corporation. However, the lower court erred in not treating the advances made as proper debts of the defendant corporation.

The detailed facts relating to the establishment of the joint venture can be found in the previous appellate and supreme court opinions. Suffice it to say, according to the ruling of the supreme court, the plaintiffs Reese and Doyle and the individual defendant Melahn (while Mr. Melahn has died and is represented in this case by his executor, we will for convenience merely refer to them as Melahn or the individual defendant) entered into a joint venture agreement to develop a cemetery. It is clear from the plaintiffs' testimony in the first trial that the parties intended their joint venture to take the form of a close corporation. Many of the details of this corporation were not specifically set out by the parties, including the amount of stated capital, financing, etc. Unfortunately, all of these matters are of prime concern in determining the rights of the parties.

It is clear, however, from plaintiff Reese's testimony in the first trial, which was uncontradicted and thus was binding on the plaintiffs, that the plaintiffs expected Mr. Melahn to obtain the financing; that the financing basically was to be by loans from Mr. Melahn which were to be repaid; and that notes were to be amortized with fair yield no lower than 6% or higher than 9%. The plaintiffs apparently were not concerned with the amount of the stated capital. Their only concern was that the restriction that Mr. Melahn be repaid 100% before the plaintiffs received any income from their 20% interest be removed and this was agreed to by the individual defendant. It is also clear that the plaintiffs' repeated representation to the court below that the Supreme Court had found the defendants were to provide all the capital was erroneous. The court made no such ruling. In fact, it merely pointed out that the proposal that Melahn finance the venture and that ownership be on the basis of 50% to Melahn and 50% to Doyle and Reese was rejected by Melahn.

The corporate defendant, Highland Memorial Park, was formed to develop the cemetery. The books of the defendant corporation show that the individual defendant contributed $100,000 in stated capital in fulfillment of his capital contribution. (50% of the shares of the corporation were issued to the individual defendant and 50% were issued in the name of the estate of Arnold Melahn, which is not a party to this litigation. None was issued to the plaintiffs.) From time to time the individual defendant and certain corporations connected with the Melahn family (affiliated corporations) made certain payments to the defendant corporation. A

principal issue is whether these payments are loans or increases of capital. While many of these payments were in cash, either to allow the defendant corporation to transact business or to pay off debts to other affiliates, many others were noncash payments, *e.g.*, in the form of an office building and mausoleum; that is, the affiliates, rather than loaning the defendant corporation the funds with which to purchase the buildings, paid those persons directly.

As mentioned before, the trial court in the first trial found that a joint venture to form a corporation had been created and entered a decree which, among other things, ordered an accounting. The parts of the decree which control the rights of the parties are the following:

"[2] It is further ordered, adjudged and decreed that with respect to all normal cemetery operations, twenty percent (20%) of all monies, property and assets coming into the hands of the defendants from or out of any of the property described in the complaint shall be by said defendants held and retained in trust for the benefit of the plaintiffs. Sales of property, other than the above, must be approved by order of Court.

[3] It is further ordered, adjudged and decreed that upon such accounting the plaintiffs, NORMAN REESE and MARK DOYLE, be and they are hereby decreed to receive twenty percent (20%) of the net proceeds of any sum found to be the total of the rents, issues and profits of the transactions alleged in the complaint and as set forth in this decree above from the defendants, E. M. MELAHN and HIGHLAND MEMORIAL PARK, Inc.

[4] It is further ordered, adjudged and decreed that a constructive trust be and hereby is imposed on the venture of the defendant, E. M. MELAHN, alleged in the complaint and set forth above, to the extent of twenty percent (20%) of the present value of the total venture and twenty percent (20%) of all income wherein [sic] and E. M. MELAHN is hereby declared constructive trustee pursuant to this order of Court and MARK DOYLE and NORMAN REESE are hereby declared beneficiaries of said twenty percent (20%) of the present value and twenty percent (20%) of the future income.

[5] It is further ordered that twenty percent (20%) of defendant, HIGHLAND MEMORIAL PARK, INC., its assets, income and real estate and any other property of any other kind, acquired by the venture of the parties hereto, be transferred to NORMAN REESE and MARK DOYLE, and in the event the defendants fail to make the said transfer, the Court retains jurisdiction to make such transfer and the Sheriff of Lake County, Illinois is hereby authorized, ordered and empowered to make such transfer.

[6] It is further ordered, adjudged and decreed that this Court retains jurisdiction of this cause for purposes of enforcing the provisions of this decree."

The trial court, in the second case, in attempting to carry out the original decree simply subtracted all the allowed disbursements actually made from all money actually received from any source including capital and called the remainder net profits of which the plaintiffs were held entitled to receive 20% immediately. It also appointed a receiver, ordered the dissolution of the joint venture and the sale of the property, the plaintiffs again to receive 20%.

The trial court treated all the cash advances made by the Melahn interests as capital and repayment of the advances were disallowed as improper return of capital. This was true even where one advance was made to pay off a loan given by another affiliated interest just six weeks before. While the court did allow some payments to the Melahn interest for such items as road grading, fuel, automobile and truck repair, etc., the court disallowed the repayment of the major noncash advances although treating the asset contributed as part of the venture of which the plaintiffs were entitled to 20%. In other words for example, the court awarded the plaintiffs 20% of the value of the office building without allowing the defendants to offset the cost of the office building as a proper disbursement or liability.

The plaintiffs belatedly during the second trial contended that the individual defendant by forming the corporation dissolved the joint venture, that the transfer of the joint venture assets to the corporation was wrongful and of no legal effect on the plaintiffs and therefore that they are entitled to possession of the joint venture assets. While the trial court originally rejected this contention as contrary to the law of the case, it must finally have agreed with some of the plaintiffs' claims since it ordered the joint venture dissolved and the property sold. The defendants agree with the plaintiffs that partnership law ought to be applied but contend that the plaintiffs are, under partnership law, only entitled to 20% of the net profits.

■■ In Illinois, as in the majority of States, "a partner contributing only services and no capital is ordinarily entitled to no share of capital upon dissolution; the capital is returned to the partner supplying it in the absence of an agreement providing otherwise and the partner contributing only services is limited to his share of the profits of the enterprise as compensation for his services * * *." (68 C.J.S. *Partnership* §391(b), at 905-906 (1950).) This court has been able to find only one case, *Thompson v. Beth* (1961), 14 Wis. 2d 271, 111 N.W.2d 171, which allowed a partner contributing only services to receive back some of the capital. That case differs sharply from the instant one, however, in that in *Beth* the partner was not paid for his contribution of 2,000 hours of labor. Here the

parties, as the first court found, did agree that the plaintiffs were to be paid $7,500 yearly for their services and indeed Mr. Doyle was paid $100 a week for 22 weeks. This is inconsistent with the idea that the services were to be the plaintiffs' contribution of capital as in *Beth.*

■■■ However, the doctrine of estoppel and the law of the case are governing here and for that reason we cannot agree with the defendant's contention. The plaintiffs are, as the second trial court properly found, estopped in this present trial by their testimony and the findings of the first trial court from contending that the creation of the corporation and the transfer of the joint venture assets to it were a breach of the joint venture agreement. Likewise, they are also estopped from denying that the joint venture agreement was to form a corporation of which they were to receive a 20% interest. The plaintiffs in their pleadings contended that they had been promised that when the corporation was established they would receive their interest therein pursuant to the agreement. The plaintiffs testified in that trial that the joint venture was to be in the form of a close corporation. The trial court, upon the plaintiffs' motion to amend the complaint to conform with the proof, deleted the allegation that the forming of the corporation was in violation of the agreement and added the allegations that the defendants violated the agreement by failing to give the plaintiffs their 20% interest in the corporation. In other words, the court, in effect, found that the plaintiffs had failed to prove that the forming of the corporation was a breach of the agreement but rather found that the only breach was the failure to transfer 20% of the interest, that is 20% of the stock. Having prevailed in the first trial on this basis, the plaintiffs are now estopped to make the contrary contention. (*In re Estate of Scott* (1976), 39 Ill. App. 3d 212.) Furthermore, this finding, affirmed by the supreme court, was binding on the second trial court.

■■ The decree of the first trial court is also binding on the defendants although to the extent that it is ambiguous it must be construed by this court. The plaintiffs have basically contended throughout that it entitled them now to 20% of whatever assets came into the defendant corporation, whether the assets were in the form of capital, advances, or profits. The defendant contended that if the plaintiffs were entitled to anything more than 20% of the net profits, they were only entitled to 20% of the capital. We believe that neither is correct.

■■ In interpreting the decree of the first trial court, it is important not to confuse the import of paragraphs 2 and 4 with that of paragraphs 3 and 5. The former merely create a constructive trust to protect the plaintiffs' interest until the transfers can be made. It is the latter which decree the actual amounts the plaintiffs are entitled to receive. Paragraphs 2 and 3 are concerned with the profits arising out of the transaction of normal cemetery operations and in paragraph 3 the plaintiffs are held to be presently entitled to receive 20% of the net proceeds arising out of the

rents, issues and profits of these operations. (Since the net proceeds were to be only of those operations, the trial court erred in considering such matters as capital and advances in determining the amount of net proceeds.) The fourth and fifth paragraphs are concerned with the corporation as a whole and in paragraph 5, 20% of the defendant corporation, its assets and any other property acquired, were transferred to the plaintiffs. Since the court did not order the corporation dissolved the only way 20% of the corporation can be transferred is to transfer 20% of its stock which the defendants twice offered to do. This interpretation of paragraph 5 is consistent with the court's finding that the only breach was the failure to transfer the 20% interest. Furthermore, any other interpretation would render the third paragraph mere surplusage since if the assets and any other property are actually distributed, the plaintiffs would be receiving the profits as part of the assets. Also, there would be no reason for the constructive trust on the future income as the plaintiffs would have no interest in the corporation once they took out their 20% interest. Moreover, a decree of the court should be presumed to be in accord with the law. In paragraph 5 the rights of creditors are not considered (unlike paragraph 3 where the plaintiffs are only awarded the net proceeds) although the creditors of a corporation are entitled to be paid before a corporation is dissolved and its assets transferred to its investors. Finally, the real property referred to in paragraph 5 is cemetery property. By law (Ill. Rev. Stat. 1975, ch. 21, par. 29), the defendant corporation may convey the land for burial purposes only. If the court intended the land to be transferred in kind rather than by a transfer of the stock of the corporation, one would expect it to put a restriction on the use of the property in the decree in conformity with the statute. For all of these reasons we interpret the decree as awarding the plaintiffs in cash 20% of the net proceeds of the profits, etc., arising out of the normal business operations and also 20% of the stock of the corporation. The award of the 20% of the net proceeds of the profits, etc., arising out of the normal business operations is not to be interpreted as a continuing order as a corporation has a right to decide, in good faith, if it wishes to put its profits back into the business rather than to distribute them.

In addition, the individual defendant would be required to restore to the corporation any sums improperly received from it. For this reason, it is still necessary to determine whether the money advanced by the individual defendant and by affiliated corporations, beyond the initial $100,000 which is conceded by the defendants to be the stated capital, are increases in capital or are loans. If they are increases in capital then the trial court was correct in disallowing them as debts and requiring the amounts paid out to be repaid to the corporation. If they are loans, then the advances (whether cash or noncash) not yet repaid must be treated as

debts and the repayments of the loans were proper and should have been credited. We find them to be loans.

■■ It is not clear from the proceedings whether the court disallowed the advances because it considered them to be capital on the basis that the individual defendant was required to make the total investment as capital or on the basis that there were no notes to represent the loans. Several times during the proceedings the court indicated that if the defendants could show a formal note or I.O.U. he would change his ruling but that the books and records of the corporation or the notations on a deposit slip were not evidence of indebtedness. The court also ruled that corporations do not customarily borrow money without signing a note. Suffice it to say there is no rule of law which requires loans to be represented by notes (see, for example, *Schneider v. Jackson* (1972), 8 Ill. App. 3d 348; *State ex rel. Gordon v. Trimble* (1927), 318 Mo. 341, 300 S.W. 475). The plaintiffs' witness testified that generally where the different corporations are made up of family members (as the defendants reasonably believed the situation to be at the time the loans were made since they were made either before the first trial court ruled there was a joint venture or after we ruled there was not and before we were reversed) there will be no notes or other formal evidence of indebtedness. The defendants also offered to introduce evidence that the custom among the companies involved was not to give notes. Accordingly, the court's ruling that no loan could be recognized unless evidenced by a note is contrary both to the law and to the evidence in the case.

Since the only evidence in the record was to the effect that the books and records do show these payments as loans and that additional evidence of indebtedness is not customary where family corporations are involved (although in fact there was also evidence that the Internal Revenue Service has treated these transactions as loans) it would appear that the only justification for refusing to treat the transactions as loans would be that the defendants had agreed to make the total investment as stated capital. However, we find no evidence in either trial to that effect. The plaintiffs' evidence in the first trial was to the contrary—that the investment was to be made by loans. They are now bound by that evidence.

The plaintiffs argue that voluntary advances are under the case law not treated as loans, citing *Farrar v. Pneumatic Gate Co.* (1899), 88 Ill. App. 498; *McCorkle v. Richards* (1903), 112 Ill. App. 495; *State v. Trimble* (1927), 318 Mo. 341, 300 S.W. 475, and 18 C.J.S. *Corporations* §483, at 1157 (1939). None of these authorities supports their contention. In *Farrar*, the appellate court affirmed the lower court's factual finding that there was never any agreement to return the moneys although the books showed the advances as liabilities. The corporation never had any cash

capital but funds were furnished by the three main stockholders as they were needed and there was no bank account. The stockholder never claimed while he was alive that the funds were merely advances to be paid back. In *McCorkle* the only issue was whether the plaintiff could benefit from a note not issued to him and which he could not produce. In *Trimble*, the court found that there was a valid and enforceable loan by the shareholder. In 18 C.J.S. *Corporations* §483 (1939), it is set forth as a general rule that stockholders may become creditors of the corporation.

■■ Normally the question of whether the payments were intended as loans would be a question of fact. However, since the evidence here is undisputed that the parties making and receiving the payments considered them as loans, and that it was proper for the individual defendant to finance the corporation by means of loans and there was no evidence that the defendant had agreed to invest even as much as $100,000 as stated capital rather than as loans, we rule, as a matter of law, that the amounts paid in by the shareholders or by the affiliated corporations, in excess of $100,000 treated by the individual defendant as stated capital, were valid and enforceable loans. Accordingly, those unpaid must be treated as liabilities of the corporation and thus the repayments of some of the loans were proper. No effort by a stockholder to collect the money due him from the corporation according to the methods provided by law can be regarded as a breach of any fiduciary duty. *Kelly v. Fahrney* (1908), 145 Ill. App. 80, *aff'd*, 242 Ill. 240.

■■ While the defendants did not appeal the disallowance of certain other expenditures, since there must be a new accounting, both to determine what the "net proceeds" of the ordinary business transactions are and to determine how much the individual defendant must return to the defendant corporation, we note that the disallowance of the expenses of setting up and running the corporation (*e.g.*, accounting fees and licensing fees) on the grounds that the forming of the corporation was a breach of the joint venture agreement is contrary to the law of the case. On the required new accounting such expenses, except for those incurred in conducting this litigation, should be allowed.

● 9 While the defendants originally appealed from the court's appointment of a receiver, they waived their objection on oral argument. However, we note that the court's order that the receiver sell the property was in excess of its jurisdiction; jurisdiction had been retained only to make an accounting and to convey 20% of the net proceeds of the ordinary business transactions and the 20% interest. Likewise, the court has no jurisdiction to dissolve the joint venture. The receiver should be discharged when the above transfers have been made.

For the foregoing reasons, the judgment of the circuit court of Lake County is reversed and the cause is remanded for the making of another

accounting and the transfer of 20% of the net profits, if any, of the normal business transactions of the defendant corporation, and 20% of the stock of the defendant corporation in accordance with this opinion.

Reversed and remanded with directions.

GUILD, P. J., concurs.