LIBCO CORPORATION, Plaintiff-Appellee and Cross-Appellant, *v.*
E. EARL ROLAND, Defendant-Appellant and Cross-Appellee.

Fourth District    No. 16925

Opinion filed September 3, 1981.

Fred Prillaman, of Mohan, Alewelt & Prillaman, of Springfield, for appellant.

Dean A. Dickie, Marvin A. Tenenbaum, and Ellis B. Rosenzweig, all of Sachnoff, Schrager, Jones, Weaver & Rubenstein, Ltd., of Chicago, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

The main issues in this case are: (1) whether the conduct of an official of a Delaware corporation, doing business in Illinois, in transacting business on behalf of that corporation with a corporation in which he held the majority interest constituted a breach of the official's duty to the first corporation; (2) if so, what was the measure of damages obtainable by the first corporation against the official; and (3) whether, because the corporation claiming to be damaged was organized under the laws of Delaware, the law of that State providing for the award of prejudgment interest would be applicable.

On March 4, 1977, plaintiff, Libco Corporation, filed suit in the circuit court of Cook County against defendants, E. Earl Roland and Thomas Schlindwein, seeking money damages for a claimed breach of fiduciary duty owed by defendants to plaintiff. Upon defendants' motion, the venue was later transferred to Sangamon County. Following a bench trial the court entered judgment in favor of plaintiff and against defendant Roland in the sum of $89,250 and costs. Plaintiff's request for prejudgment interest was denied. Judgment was also entered in favor of defendant Schlindwein and against plaintiff.

Roland appeals, asserting: (1) the finding he had breached a fiduciary duty was not supported by the evidence; (2) damages were not proved to the extent allowed; (3) the court's refusal to grant him discovery was error; and (4) the court erred in sustaining an objection to evidence explaining the fairness of a transaction. Plaintiff cross-appeals the damage award, claiming it was entitled to prejudgment interest, but does not challenge the judgment in favor of Schlindwein. We affirm the finding in favor of plaintiff but reverse the damage award, remanding for a recomputation of damages which is to include interest as claimed by plaintiff on its cross-appeal.

The facts were mostly undisputed. Plaintiff was a Delaware corporation authorized to do business in Illinois and had its principal place of business in Cook County. Roland was an officer of plaintiff and became a director during the transactions involved here. He was also president of McElroy-Roland Machinery Company (McElroy) which at all times pertinent was a wholly owned subsidiary of plaintiff. Roland was also the principal shareholder and president of a financing corporation called Rolmac Corporation (Rolmac) which had been purchasing notes and other financial obligations from plaintiff and McElroy and discounting them through banks. McElroy was engaged in the sale of heavy equipment mostly used for construction work.

The claimed breach of fiduciary obligation arose from a transaction initiated in January of 1971 when, at Roland's direction, a purchase note of Williams Construction Company was assigned with recourse on McElroy, the seller, to Rolmac. The note was secured by the equipment purchased. Rolmac assigned the note to a Springfield bank. In March 1971, plaintiff informed Roland by letter that he was not to have "future dealings" on behalf of McElroy with Rolmac and to let existing accounts "run off." By December of 1971 the Williams Company had made payments reducing the principal of the note to $234,470.91. At that time Williams Company owed additional unsecured sums to McElroy. Roland arranged for a new note in the sum of $426,310.75 to be given by the Williams Company to McElroy, in discharge of the previous note and to cover the entire indebtedness. Roland then acting on behalf of McElroy assigned this note to Rolmac. The assignment stated that it was "with recourse to [McElroy] in the amount of 55% of the outstanding balance." Significantly, 55% of the original principal balance of $426,310.75 was $234,470.91, the amount of the then principal balance on the discharged note upon which Rolmac had recourse against McElroy. The consolidated note was also assigned by Rolmac to a Springfield bank.

In January of 1973, the three Williams brothers who were the proprietors of the Williams Company decided to separate. In a transaction, the mechanics of which are not entirely clear, new notes were issued by Williams Construction Company, Inc., L. W. Williams Contractor, Inc., and Al's Construction, Inc., in the principal sums of $180,623.15, $46,789.30, and $88,368.30, respectively. Each of the above firms had apparently come under the control of a different brother. The $426,310.75 note was not discharged but continued to be held by its possessor. In April of 1973 Williams Construction Company, Inc., executed and delivered a note for $35,573.33 to Rolmac. Of this sum $16,114.51 represented the amount of the Williams Construction Company's then open account indebtedness to McElroy. Rolmac paid that sum to McElroy, and an endorsement on behalf of McElroy was made on the note stating that McElroy would be liable to Rolmac for such portion of that sum which the maker did not pay.

The most controversial transactions occurred in January of 1973 when Roland had the equipment, which stood as security for the $180,623.15 separate note of the Williams Construction Company, Inc., repossessed and apparently placed in the possession of McElroy. The note was then in default. At about the same time, Roland caused McElroy to issue a check in the sum of $198,000 to the Springfield bank which was assignee of the various Williams notes. In August of 1973 Roland resigned his positions with plaintiff and its subsidiaries. In September of 1973, with plaintiff's approval, the repossessed equipment was sold for $109,250 by

McElroy to Roland Machinery Co., an entity in which Roland had a substantial interest.

■■ The parties are in disupte as to whether Illinois or Delaware law controls as to the duty owed by a corporate official to his corporation. As we will later explain, we agree with plaintiff that the law of the State of incorporation controls such internal matters of a corporation. (*National Lock Co. v. Hogland* (7th Cir. 1938), 101 F.2d 576; *Paulman v. Kritzer* (1966), 74 Ill. App. 2d 284, 219 N.E.2d 541, *aff'd* (1967), 38 Ill. 2d 101, 230 N.E.2d 262.) However, even if, as claimed by Roland, Illinois law controls, our law clearly requires that: (1) a corporate official, particularly a director, has a duty not to make transactions on behalf of the corporation which are damaging to the corporation and profitable to him; and (2) the corporate official has the burden of establishing the fairness of any transaction which he engages in on behalf of the corporation with an entity in which he has a substantial interest. *Shlensky v. South Parkway Building Corp.* (1960), 19 Ill. 2d 268, 166 N.E.2d 793; *Dixmoor Golf Club, Inc. v. Evans* (1927), 325 Ill. 612, 156 N.E. 785; see also *Zeilenga v. Stelle Industries, Inc.* (1977), 52 Ill. App. 3d 753, 367 N.E.2d 1347.

■■■ Roland contends that if Delaware law is to be applied, the corporation receiving injury rather than the official charged has the burden of proving the unfairness of any transaction in which the official has a conflict of interest. As we conclude that the evidence affirmatively and strongly showed that the issuance of the $198,000 to the Springfield bank was an unfair transaction, we need not decide where the burden of proof lay.

Neither Roland's conduct in assigning the original Williams Construction Company note to Rolmac with recourse, in January 1971, nor that involved in his consolidation of the Williams Company's debts to McElroy and assigning the resultant note to Rolmac with 55% recourse, in December 1971, were expressly or impliedly found by the trial court to be a breach of duty. The evidence showed that McElroy received the full face amount of the original note from Rolmac. The March 1971 letter from plaintiff's officers to Roland did not indicate those officers to have considered the January 1971 assignment to be unfair. The execution of the consolidated note and its assignment in December 1971, although arguably in violation of the directions of the letter of the previous March that Roland not have future dealings between McElroy and Rolmac, did not increase the amount of McElroy's recourse exposure as the then existing principal balance on the old note equalled 55% of the principal of the consolidated note. Accordingly, we need not consider the fairly substantial evidence that Roland's conduct as to this part of the transaction was ratified.

The basis of the trial court's finding of a breach of fiduciary duty was

Roland's issuance of the $198,000 check to the assignee bank to which Rolmac was obligated for 100% recourse. At that time, the principal balance on the Williams' consolidated note of December 1971 was approximately $315,780, and McElroy had recourse liability for 55% of the "outstanding balance" or the approximate sum of $173,679 which was less than the $198,000 face amount of the check. Moreover, Roland could not justifiably have assumed that no more was obtainable from the Williams interests to further pay off that note. Although the note was in default, no showing was made that the assignee bank was requesting payment. The trial court could have concluded that the best interests of McElroy required that it hold off as long as possible before making recourse payment. Roland admitted that his purpose in repossessing the equipment and having the $198,000 check issued was to protect his interests.

Roland notes that it was stated in *Reese v. Melahn* (1977), 45 Ill. App. 3d 585, 359 N.E.2d 1248, that a shareholder has a right to collect a loan owed him by the corporation. However, that does not mean that an officer and director of a corporation can, while acting on behalf of the corporation, take or vote for action detrimental to the corporation but beneficial to him. The trial court's finding that Roland had breached his fiduciary duty was fully supported by the evidence.

■■ In finding plaintiff's damages in the sum of $89,250, the trial court deducted from $198,000, which was the amount of the improperly issued check, the sum of $109,250, which plaintiff received from the sale of the repossessed equipment. Roland complains that the plaintiff should have sold the equipment at retail and received a higher price. He is in no position to complain, because the sale was one for which he had made the arrangements before resigning and it was to a corporation he controlled. We approve of the trial court's use of the figure in making its calculation.

Plaintiff's detriment from Roland's repossession of the equipment and issuance of the check was also diminished by its release from recourse liability which resulted from the payment to the bank. When the check was issued, the outstanding balance on the consolidated note of December 1971 was approximately $315,780. Later payments on the Williams indebtedness on behalf of L. W. Williams Contracting Company and Al's Construction Company in the respective approximate sums of $78,000 and $46,790 were made thus reducing the "outstanding balance" to the approximate sum of $190,990. Plaintiff argues that the repossessed equipment should have been sold for more than $109,250, but, as it bound itself to a sale at that price after Roland had resigned all positions with it, we deem it to be in a poor position to dispute that price. Had the equipment been sold with the proceeds applied to the consolidated note, the "balance outstanding" would then have been approximately $81,740.

■■ Roland's evidence that no other money was available from the

Williams interests was not contradicted. Thus, if the consolidated note had been reduced to approximately $81,740, McElroy's recourse liability would have approximated $44,957. The trial court gave no consideration to this benefit having been obtained by McElroy. It erred in this respect.

As we have indicated, the trial court's determination that the $198,000 check was wrongfully issued in January 1973 was fully supported by the evidence. The parties do not dispute that any damages suffered were ameliorated when McElroy received the proceeds of the sale of the repossessed equipment. We have also indicated that some consideration should also have been given to McElroy's discharge from recourse liability which under the evidence would have eventually amounted to approximately the sum of $44,957. The trial court was not required at trial and will not be required on remand in reassessing damages to merely subtract the sum of the proceeds of repossession and probable recourse liability from $198,000 in arriving at damages. Consideration should be given to the likelihood that McElroy would have been subject to make payment on its recourse liability a substantial time after the check was issued and that McElroy did not receive the benefit of the $109,250 until September of 1974.

For another reason, the damage award must be reversed and the case remanded for redetermination of damages. We agree with plaintiff's assertion on cross-appeal that it was entitled to prejudgment interest.

In *National Lock Co. v. Hogland* (7th Cir. 1938), 101 F.2d 576, the court found that Delaware law was applicable in a situation where plaintiff was a Delaware corporation which sought to recoup certain funds which had been unlawfully withdrawn from its treasury and appropriated to the personal use of the defendant who was president, a director, and a stockholder in the corporation. The court assessed interest on the amount improperly withdrawn from the date of withdrawal. In rejecting defendant's argument that Illinois law should control the allowance of interest, the court stated:

> "The unlawful withdrawals of funds were made in Illinois, but we must look to the law of Delaware to determine the legal consequences of the violation of the plaintiff's substantive right by such unlawful withdrawals. The substantive law which controls makes interest a part of the obligation flowing from the illegal withdrawals of funds. Interest is a part of plaintiff's substantive right and is not merely an item of damages to be awarded by a court at its discretion upon an obligation not stipulating 'for interest'. Consequently, as stated above, it must be governed by the law which concededly in this cause governs the plaintiff's substantive right." 101 F.2d 576, 587.

The *National Lock Co.* case was cited in *Paulman v. Kritzer* (1966),

74 Ill. App. 2d 284, 219 N.E.2d 541, *aff'd* (1967), 38 Ill. 2d 101, 230 N.E.2d 262. That case involved a stockholder's derivative suit for the benefit of defendant, a Delaware corporation, instituted by plaintiff against defendant Kritzer, alleging that he violated the fiduciary duty owed by him to the corporation as an officer and director. The court stated that as the corporation was a Delaware corporation, Delaware law with respect to the fiduciary duties of a corporation's officers and directors was controlling. The case did not involve the awarding of prejudgment interest.

■■ Citing *Englemann v. Standard Mutual Insurance Co.* (1972), 4 Ill. App. 3d 55, 280 N.E.2d 240, Roland maintains plaintiff was barred from claiming prejudgment interest because it did not pray for that relief in its complaint. However, *Englemann* was a decision by the appellate court for the Fifth District. The precedent for this district was established in *Kansas Quality Construction, Inc. v. Chiasson* (1969), 112 Ill. App. 2d 277, 250 N.E.2d 785, where the court held the proper procedure for obtaining prejudgment interest to be to move for it after verdict and before judgment. Here, before judgment, plaintiff had filed a memorandum setting forth its position that it was entitled to prejudgment interest. The record indicates it had argued that it was so entitled. We hold the procedure followed by plaintiff to have been sufficient to raise the issue.

■■■ Under section 1 of the Uniform Judicial Notice of Foreign Law Act (Ill. Rev. Stat. 1979, ch. 51, par. 48g) our courts take judicial notice of the law of Delaware which provides for prejudgment interest in a case of this nature (see *Superior Tube Co. v. Delaware Aircraft Industries, Inc.* (D. Del. 1945), 60 F. Supp. 573). Under section 4 of the Act (Ill. Rev. Stat. 1979, ch. 51, par. 48j), plaintiff was required to give notice of its intent to rely on Delaware law. The memorandum filed served as such notice and set forth the decisions to be relied on. Defendant further asserts that plaintiff waived its contention that Delaware law governed the relationship of Roland to plaintiff because plaintiff relied on Illinois statutory law concerning the parol evidence rule in objecting to evidence involving the meaning of the assignment on the Williams consolidated note. (Ill. Rev. Stat. 1979, ch. 26, pars. 2—202, 3—415(3).) While the parol evidence rule is one of substantive law, the choice of law governing the assignment on an instrument executed in Illinois and to be performed in Illinois would not be the same as that governing the fiduciary relationship of one of those parties to the other when one party is a Delaware corporation and the other party is one of its officers.

The request for prejudgment interest was sufficiently presented.

■■■ We have little difficulty with defendant Roland's other claims of error. He failed to provide a transcript of the hearing on his motion for an order on plaintiff to produce certain documents. The documents appear to be the work product of the plaintiff's attorneys. Without a transcript,

we would have no basis for holding the trial court abused its discretion in denying the motion. (*Early v. Early* (1957), 13 Ill. App. 2d 394, 141 N.E.2d 758.) Defendant also complains of the trial court's refusal to permit him to testify how the 55% recourse provision of the consolidated note was decided upon. Defendant's failure to make an offer of proof forecloses any claim of error. (*Miller v. Chicago Transit Authority* (1966), 78 Ill. App. 2d 375, 223 N.E.2d 323.) Furthermore, we have considered the obvious relationship between 55 percent of the amount of the consolidated note and the then balance of the original full recourse note.

For the reasons stated: (1) the portion of the judgment finding defendant Roland liable to plaintiff is affirmed; (2) the damage award is reversed; and (3) the case is remanded to the circuit court of Sangamon County with directions to reascertain damages. The circuit court may make its new damage award upon the basis of the record or may request further evidence upon any point it deems necessary. Any award shall include prejudgment interest from the date of the issuance of the $198,000 check computed at the various legal rates of interest on judgments prevailing under the laws of the State during the period.

Affirmed in part; reversed in part; remanded with directions.

MILLS and WEBBER, JJ., concur.