EUGENE GAISER, Plaintiff-Appellee and Cross-Appellant, v. THE VILLAGE OF SKOKIE, Defendant-Appellant (Skokie Police Pension Board, Intervenor and Third-Party Plaintiff-Appellant and Cross-Appellee).

First District (3rd Division)   Nos. 1—92—0161, 1—92—0192 cons.

Opinion filed March 8, 1995.

Jeffrey D. Greenspan and Timothy E. Guare, both of Chicago, and Barbara M. Meyer, Corporation Counsel, of Skokie, for appellant Village of Skokie.

Richard J. Reimer, of Chicago, for appellant Skokie Police Pension Board.

Susan P. Malone, of Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

This action was initiated by plaintiff, Eugene Gaiser, in an effort to recover compensation for 241 days of emergency leave benefits allegedly owed to him by defendant, the Village of Skokie (Village). The intervenor/third-party plaintiff, the Skokie Police Pension Board (Pension Board), was then granted leave to file an action to recover disability pension payments allegedly paid prematurely to plaintiff in the event that he was successful in his initial complaint against defendant. Subsequently, the trial court dismissed the intervenor/third-party plaintiff's complaint on the basis that it had failed to ap-

peal the administrative decision granting plaintiff disability pension benefits within 35 days as required by section 3—103 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 3—103). Following a bench trial, the trial court awarded plaintiff 241 days of emergency leave benefits plus prejudgment interest. The trial court also refused to permit the Village to offset the judgment amount by the pension payments made to plaintiff. We reverse in part, affirm in part and remand.

The parties make the following allegations on appeal: (1) defendant contends that plaintiff never pleaded that he had a vested right to compensation for emergency leave or proved that he had a contractual right to emergency leave; (2) defendant and the intervenor/third-party plaintiff contend that the trial court erred in reversing its denial of plaintiff's claim for emergency leave; (3) the intervenor/third-party plaintiff contends that the trial court erred in dismissing its third-party claim; and (4) defendant contends that the trial court's award of damages to plaintiff was excessive. Plaintiff contends that the trial court erred in dismissing its claim.

The Village is a home rule municipality operating as a managerial form of government pursuant to article 5 of the Illinois Municipal Code (Ill. Rev. Stat. 1987, ch. 24, par. 5—1—1 et seq.). The village manager is the chief administrative officer of a home rule municipality and sets policies and procedures for its employees (see Ill. Rev. Stat. 1987, ch. 24, par. 5—3—7; Skokie, Ill., Village Code § 3.06 et seq. (19____)).

On May 19, 1964, Bernard Marsh, Village manager, promulgated administrative directive No. 54 to the department directors of the Village. Section 5.2 of administrative directive No. 54 made the following provisions for emergency leave: "Emergency leave is considered a privilege to be used only in the case of need. It shall be used for illness; off the job injury or disability; or quarantine due to a contagious disease ***." Section 5.11 of the administrative directive provided that there are no "payouts" for accumulated emergency leave or sick leave and that the department heads have the discretion to deny emergency leave.

In 1978, Kenneth B. Chamberlain, defendant's chief of police, promulgated special order No. 78—1 to all personnel of the Skokie police department. Special order No. 78—1 provided that emergency leave was a privilege to be used only in the case of need and that department chairmen had the right to deny emergency leave to employees. Special order No. 78—1 also provided that sick leave of 12 days per calendar year was also available to employees, with no carry over from year to year. Under special order No. 78—1, the first

three days of illness were to be counted as sick leave and after the third day of such absence, the use of emergency leave could be recommended to the office of the police chief for approval.

Defendant's personnel manual was promulgated by Village manager Robert Eppley on July 2, 1984. Article 8 of the personnel manual contained a description of defendant's new sick leave policy. Paragraph 12 of the article prospectively eliminated the accrual of the emergency leave benefit for future employees but provided that employees who had already accrued emergency leave could retain such leave accumulated as of December 31, 1982.

The personnel manual also provided that no payout of accumulated sick or emergency leave was permissible. As a reward for outstanding attendance, however, each eligible employee was awarded one additional vacation day for each additional four sick days earned but not used. Unlike regular vacation, which cannot be carried over to retirement, department heads could permit the carryover of these additional vacation days to retirement or termination, with the staffing needs of the Village in scheduling workloads as the controlling factor.

In January of 1986, plaintiff, a Village police officer, requested by his attorney that he be relieved of street duty on account of his permanent hearing loss. The chief of police of the Village (Police Chief) responded by assigning plaintiff to a "light duty" assignment until his medical condition could be confirmed and a decision would be made by the pension board.

Plaintiff requested the use of accumulated emergency leave of 241 days prior to applying for a disability pension under the Pension Code. (Ill. Rev. Stat. 1987, ch. 108$^{1}/_{2}$, par. 3—101 et seq.) After consultation with the Village manager's office and the police department, the Police Chief denied plaintiff's request. He also informed plaintiff that because of the fact that the department does not have permanent light duty positions, the Village would keep him on light duty only until a decision on his disability pension application was made. The Police Chief advised plaintiff that in the event that plaintiff did not apply for disability, he would petition the fire and police commission for plaintiff's removal on the basis that plaintiff was unfit for duty. Other employees had requested emergency leave prior to retirement and were denied by the Police Chief.

Plaintiff then requested a disability pension from the Pension Board. Plaintiff informed the Pension Board on or about July 12, 1986, that he was suffering from a hearing loss with consistent ringing in his ears, that his condition was permanent and that he could not perform the duties of a police officer without endangering himself

or others. In support of his statement of his condition, plaintiff provided medical reports from three doctors. Subsequently, a non-duty disability pension was approved by the Pension Board and plaintiff has been receiving a monthly disability pension check in the amount of $1,287.08 since September 9, 1986, the date he was removed from defendant's payroll.

On August 3, 1987, plaintiff filed a complaint for declaratory relief and damages against defendant wherein plaintiff prayed for the following relief:

> "Wherefore, plaintiff Eugene Gaiser by and through his attorney Susan P. Malone respectfully requests this Honorable Court for the following relief:
>
> a) a declaration that the Personnel Manual of the Village of Skokie insofar as emergency leave and sick leave provisions are concerned constitutes a contract binding upon the employer defendant;
>
> b) a declaration that the plaintiff Eugene Gaiser is and was entitled to utilize emergency leave benefits for absence required by his hearing loss;
>
> c) an order directing the Village to account to Eugene Gaiser for all sums due and owing which may be due and owing as a failure of the Village to permit said plaintiff to remain on emergency leave status for a period from September 9, 1986, until May 8, 1987;
>
> d) damages in the amount shown due and owing after such accounting."

The complaint did not seek a declaration of any vested or earned benefit and plaintiff never amended his complaint to seek such a declaration.

Defendant, in its answer, denied that the personnel manual created a binding contract and that plaintiff was entitled to utilize his emergency leave benefits before going on disability pension. Defendant also made affirmative defenses stating that the award of emergency leave and sick leave was within the discretion of the department head. Defendant's affirmative defenses further stated that sick leave or emergency leave is only awarded when the illness prevents an employee from working for the department due to the illness and that plaintiff wasn't eligible for emergency leave because he was working for the police department in a light duty capacity. Plaintiff, over objection, was granted leave to file his reply to the affirmative defenses on May 3, 1989, almost 1.5 years later.

On May 10, 1990, plaintiff filed a counterclaim against the Pension Board, seeking to have his disability pension benefits increased to 50% of the salary paid to an employee of plaintiff's rank as of May

8, 1987, the date that plaintiff would have been taken off of defendant's payroll had he been permitted to exhaust his accumulated emergency leave. On May 31, 1991, and June 5, 1991, the Pension Board and defendant filed respective motions to dismiss plaintiff's counterclaim.

Plaintiff also filed a motion to dismiss the Pension Board's third-party complaint. In addition, defendant filed a motion to dismiss for mootness and a motion for judgment on the pleadings. Defendant, in its motion to dismiss for mootness, alleged that the issue was moot based upon the fact that plaintiff had previously applied for his disability pension making him ineligible for emergency leave, thus rendering the matter moot. With regard to the motion for judgment on the pleadings, defendant asserted that plaintiff's emergency leave benefits did not constitute a contract right under the personnel manual entitling him to use emergency leave and that the denial of emergency leave was within the discretion of the Police Chief.

On July 18, 1991, after a hearing on the parties' motions to dismiss, the trial court dismissed plaintiff's counterclaim and granted plaintiff's motion to dismiss the Pension Board's third-party complaint. The basis for these rulings was that both parties sought to reverse or modify the August 14, 1986, administrative decision of the Pension Board granting plaintiff a nonduty disability benefit, and that either party was precluded from appealing said decision because it failed to file a complaint in administrative review within 35 days from the date of the decision as required by section 3—101 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 3—101).

The matter proceeded to a bench trial on September 16, 1991. The Pension Board did not participate in the trial. On December 6, 1991, the trial court filed findings of fact and a memorandum opinion and order. The trial court found that emergency leave was an earned benefit and that plaintiff was entitled to an accounting of 241 days of emergency leave plus prejudgment interest. In addition, the court refused to reduce plaintiff's award by deducting the amount of pension benefits received by plaintiff during the time that he allegedly should have received emergency leave pay. Plaintiff, defendant and the intervenor/third-party plaintiff all appeal.

First, defendant contends that the trial court's ruling is erroneous because plaintiff failed to plead and prove that he was entitled to be compensated for emergency leave. Plaintiff, in his cross-appeal, maintains that the record supports the trial court's ruling that plaintiff was wrongfully denied emergency leave. We disagree.

■ The standard of appellate review of a declaratory judgment is as follows:

"[T]he grant or denial of declaratory relief is discretionary. [Citation.] The trial court's exercise of this discretion is subject to searching appellate review and is not given the same deference as is the trial court's exercise of discretion in other contexts. [Citation.] Independent review is justified because the exercise of the trial court's discretion in granting or denying declaratory relief is not dependent upon factors which are difficult for an appellate tribunal to review, such as, for example, factual determinations of credibility." *Chicago & Eastern Illinois R.R. Co. v. Reserve Insurance Co.* (1981), 99 Ill. App. 3d 433, 436-37, 425 N.E.2d 429, 432.

We hold that the trial court's ruling is erroneous (1) because plaintiff failed to establish that the personnel manual created a contract which entitled him to utilize his emergency leave; and (2) because plaintiff's proof does not conform to the pleadings.

■ General guidelines in a personnel manual are not binding contracts. (*Koch v. Illinois Power Co.* (1988), 175 Ill. App. 3d 248, 255-57, 529 N.E.2d 281, 286-88.) In *Duldulao v. St. Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 490, 505 N.E.2d 314, 318, the supreme court articulated the conditions under which an employee handbook may be construed as a contract. The standards for establishing the existence of contractual rights and obligations pursuant to *Duldulao* are as follows: (1) the policy statements must contain a clear promise that an offer has been made; (2) it must be disseminated by the employer so that the employee is aware of its contents and reasonably believes it to be an offer; and (3) the employee continues to work after receiving the policy statement which serves as the basis for consideration.

■ None of these factors existed in the present case. Emergency leave was a privilege bestowed upon employment at the discretion of department directors and thus did not constitute a clear promise that an offer had been made. Secondly, the personnel manual was never disseminated to plaintiff and therefore could not form the basis for a contract. The personnel manual was distributed only to and intended for use by the department directors. Finally, plaintiff first read the manual after his requested emergency leave was denied and he had applied for a pension. For the above reasons, the personnel manual could not be construed as a contract under *Duldulao.*

Moreover, plaintiff should not have been entitled to proceed and receive a judgment on the basis that he was entitled to receive emergency leave as a vested benefit when the vested benefit argument was not pled at trial. The record shows that, at the close of his case in chief, plaintiff abandoned his contract claim and only then pursued a vested rights claim:

"THE COURT: Counsel, in your prayer, in your complaint for declaratory relief and damages you pray that a declaration of the personnel manual of the Village of Skokie, as far as emergency leave provisions are concerned, constitutes a contract binding upon the employer.

In your prayer for declaration that the plaintiff Eugene Gaiser is and was entitled to utilize emergency benefits for absence required by his hearing loss, and your asking for an order directing the Village to account to him for all sums due and owing. You now argue that this is not a *St. Mary of Nazareth* case, it is not a contract case, but an accrual of benefits, is that correct?

MISS MALONE: Your Honor, and I believe that was also addressed in the context of our motion for summary judgment under subparagraph b.

THE COURT: The motion for directed finding will be denied.

MISS MALONE: Thank you Your Honor.

THE COURT: Defense.

MR. GREENSPAN: Your Honor, if I could find some place in this complaint where they make a reference to an earned benefit, there's an accrued mention but not earned."

Although plaintiff argued vested rights and contract claims in his motion for summary judgment, after the motion was denied, plaintiff never amended his complaint to request a declaration of a vested right.

It is elementary that the issues in a case are formed by the pleadings and that the allegations and the proof must correspond thereto. A party may not prevail where the proof does not follow the allegations and conversely where the allegations are not substantiated by any proof. (*Tonchen v. All-Steel Equipment, Inc.* (1973), 13 Ill. App. 3d 454, 467, 300 N.E.2d 616, 625.) A plaintiff cannot recover after stating one cause of action in the complaint and presenting a different one by proof. *Curry v. Summer* (1985), 136 Ill. App. 3d 468, 480, 483 N.E.2d 711, 719.

In the present case, plaintiff never amended his complaint and therefore must stand by his pleadings seeking the court's declaration of a contract, the existence of which has been neither established nor proven.

Not only was the vested rights allegation not pled, but the trial court ignored well-established case law which holds that there is no vested employment benefit unless it arises from a contractual or constitutional right. Statutes governing wages, working conditions and benefits of public employees do not create any vested rights in their continued existence. (*Gust v. Village of Skokie* (1984), 125 Ill. App. 3d 102, 106-07, 465 N.E.2d 696, 699.) Vesting, in a legal sense,

refers to an enforceable contractual right to the benefits of the pension system. (*Gualano v. City of Des Plaines* (1985), 139 Ill. App. 3d 456, 458, 487 N.E.2d 1050.) The concept of a vested benefit has been equated with "property interests" under the due process clause of the fifth amendment to the United States Constitution. (See *Holmes v. Aurora Police Pension Fund Board of Trustees* (1991), 217 Ill. App. 3d 338, 577 N.E.2d 191.) "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." (*Board of Regents of State Colleges v. Roth* (1972), 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709; *Holmes*, 217 Ill. App. 3d at 346, 577 N.E.2d at 196.) An "entitlement" is a "[r]ight to benefits, income or property which may not be abridged without due process." Black's Law Dictionary 532 (6th ed. 1990).

In the present case, plaintiff failed to establish any contract right and he therefore had no vested interest in or right to emergency leave benefits. Plaintiff also had no property interest in or entitlement to emergency leave. Emergency leave was not an earned benefit similar to vacation and/or severance pay. It was a form of discretionary leave. The text of the personnel manual provided that emergency leave and sick leave were granted at the discretion of the department director.

■ Next, we hold that defendant did not abuse its discretion in denying plaintiff's claim, that the denial of plaintiff's claim was an administrative decision within the sound discretion of defendant and that the trial court erred in reversing defendant's denial thereof.

At the outset, plaintiff requested use of his accrued emergency leave only after it had been determined that he would never return to duty as a police officer. The concept of "leave" or "leave of absence" is defined as a "[t]emporary absence from employment duty with intention to return during which time remuneration and seniority are not normally affected." (Black's Law Dictionary 891 (6th ed. 1990).) Plaintiff did not request a leave of absence. Plaintiff requested that he be paid emergency leave compensation without any intention on his part to return to work. The record firmly establishes that defendant did not grant emergency leave with the knowledge that an employee would never return to work. For the above reasons, the Village's administrative decision should not have been disturbed by the trial court.

■ Next, defendant contends that the denial of plaintiff's claim for emergency leave was an administrative decision well within its discretion and that it should not have been overturned by the trial court. We agree.

What is at issue in this case is the interpretation of the personnel manual. Under a managerial form of government, the village manager is the chief administrative officer of the municipality. (Ill. Rev. Stat. 1987, ch. 24, par. 5—3—7.) The granting and awarding of emergency leave to plaintiff were within the discretion of the chief of police, subject to review by the village manager, who is charged with the duty to interpret and clarify the personnel policies of defendant based upon the evidence and record presented to him by the chief and the employee. It is not proper for a court to substitute its own judgment for that of a sound administrative decision.

As we noted above, plaintiff raised the issue of a vested right for the first time in response to defendant's motion for summary judgment. Defendant argued, in reply, that the appropriate remedy in reviewing an administrative decision was a writ of *certiorari*. A common law writ of *certiorari* will lie for the review of a single administrative decision. (*Jones v. Lazerson* (1990), 203 Ill. App. 3d 829, 834, 561 N.E.2d 151, 154.) The standard to be followed in a common law writ of *certiorari* as it relates to the present case is whether or not there is any evidence which supports the administrative decision of defendant to deny plaintiff's claim for emergency leave. Under the standards applicable to an action for common law writ of *certiorari*, defendant's decision would have been affirmed. Accordingly, defendant's decision should not have been disturbed by the trial court.

■ Next, the Pension Board contends that the trial court erred in dismissing its third-party claim because the trial court's dismissal permitted plaintiff to receive pension benefits he was not entitled to under the Pension Code. Plaintiff maintains that the trial court did not err in dismissing the Pension Board's third-party claim or its counterclaim because both actions were time barred.

In the present case, the Pension Board contended that the trial court would have no right to compel it to make retroactive payments or credits to plaintiff based upon the reduced pension because of the 35-day limitation period in the Administrative Review Law (see 735 ILCS 5/3—101 *et seq.* (West 1992)). The Pension Board also maintained that although it was seeking a "dollar for dollar" return from plaintiff, any claim by plaintiff for an increased pension in the future was time barred by the Administrative Review Law. In a cross-claim, plaintiff argued that if the Pension Board's argument were true, the Pension Board was also precluded from seeking a reimbursement from plaintiff which would effectively nullify its 1986 decision that plaintiff was entitled to a disability pension.

The Pension Board is governed by article 3 of the Pension Code, which regulates and establishes the powers and duties of police pension boards in municipalities with 5,000 to 50,000 residents, such as the Village. (Ill. Rev. Stat. 1985, ch. 108$^{1}$/$_{2}$, par. 3—101 *et seq.*) Section 3—148 (Ill. Rev. Stat. 1987, ch. 108$^{1}$/$_{2}$, par. 3—148) of the Pension Code provides that the review of Pension Board orders shall be pursuant to the Administrative Review Law, which makes the following pertinent provision:

> "Every action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected thereby."

(Ill. Rev. Stat. 1987, ch. 110, par. 3—103.) Where a statute provides that the decisions of an administrative agency are subject to the Administrative Review Law, the provisions of the Administrative Review Law provide the exclusive method of review. (*Mason v. Board of Trustees* (1984), 125 Ill. App. 3d 614, 617, 466 N.E.2d 365, 367.) As section 3—148 of the Pension Code expressly adopts the Administrative Review Law (Ill. Rev. Stat. 1987, ch. 108$^{1}$/$_{2}$, par. 3—148), the decisions of the Pension Board may only be reviewed pursuant to that law.

This court has also recognized that even where a Pension Board decision results in an overpayment or underpayment to a recipient, courts have no jurisdiction over a claim to alter such a decision unless the claim is filed within the limitations period specified by the Administrative Review Law. See *Rossler v. Morton Grove Police Pension Board* (1989), 178 Ill. App. 3d 769, 771-74, 533 N.E.2d 927, 929-31; *Board of Trustees of Police Pension Fund v. Washburn* (1987), 153 Ill. App. 3d 482, 483-86, 505 N.E.2d 1209, 1211-12.

We hold that plaintiff, by his cross-claim, and the Pension Board, by its third-party action, in effect sought to review or modify the Pension Board's decision of its 1986 decision that plaintiff was entitled to a pension. Accordingly, the trial court's dismissal of the Pension Board's third-party claim and plaintiff's counterclaim was proper.

Finally, defendant contends that the trial court's award of damages to plaintiff was excessive. We agree. The court in this case awarded plaintiff an emergency leave benefit but refused to reduce the award by the amount equivalent to payments from the pension fund covering the same time period.

The general rule of contract damages is that the person who is injured is to be placed in the position he would have been in had the contract been performed, but not in a better position. The measure of damages for termination of an employment contract is the amount the plaintiff would have earned absent the breach, less what he actu-

ally earned or could have earned by exercise of reasonable diligence during the contract period after his termination. (*Ashe v. Sunshine Broadcasting Corp.* (1980), 90 Ill. App. 3d 97, 100, 412 N.E.2d 1142, 1145.) Although this is not specifically a contract action, the court should be guided by these principles.

Furthermore, had plaintiff been on the payroll receiving his emergency leave benefit for 241 days, he would not have been entitled to receive a disability pension. (Ill. Rev. Stat. 1987, ch. 108$^{1}$/$_{2}$, par. 3—114.2.) Even if plaintiff were entitled to receive a pension, he was not entitled to the increase in pension that the court awarded him due to an increase in the salary for employees at the rank of a police officer, as of May 1, 1987.

In addition, we hold that plaintiff is not entitled to prejudgment interest from June 10, 1986, the date he was denied his benefit, to August 3, 1987, the date that he filed his complaint. Plaintiff did not plead or request prejudgment interest in his complaint. As we noted above, the law requires that the proof and the judgment must be consistent with the pleadings. Plaintiff, having failed to amend his complaint seeking prejudgment interest, was not entitled to it. Accordingly, the trial court erred in awarding plaintiff emergency leave pay and prejudgment interest.

For the above reasons, we reverse and remand the trial court's judgment and order in favor of plaintiff. We affirm the trial court's order dismissing plaintiff's counterclaim and the intervenor/third-party plaintiff's claim.

Reversed in part; affirmed in part and remanded.

GREIMAN, P.J., and TULLY, J., concur.