2000 OK CIV APP 146

DUNCAN OIL PROPERTIES, INC., an Oklahoma corporation; Walter Duncan Oil, an Oklahoma limited partnership; Club Oil & Gas, Ltd., a Colorado limited partnership; JWD, III, Inc.; J. Walter Duncan, Jr., Inc.; and Louis McKee Ford Living Trust, Plaintiffs/Appellees,

v.

VASTAR RESOURCES, INC., Defendant/Appellant.

No. 93,600.

Court of Civil Appeals of Oklahoma, Division No. 1.

Aug. 21, 2000.

Rehearing Denied Sept. 22, 2000.

Certiorari Denied Dec. 12, 2000.

Mark D. Christiansen, C. Robert Stell, Oklahoma City, Oklahoma, For Appellant.

James M. Peters, James S. Drennan, Robert A. French, Oklahoma City, Oklahoma, For Appellee.

James C.T. Hardwick, Janis W. Preslar, Tulsa, Oklahoma, For Amicus Curiae.

## OPINION

CARL B. JONES, Presiding Judge:

¶ 1 This contract dispute was filed by Appellees, Duncan Oil Properties, Inc., Walter Duncan Oil, Club Oil & Gas, Ltd., JWD, III, Inc., J. Walter Duncan, Jr., Inc., and Louis McKee Ford Living Trust (Duncan), seeking a declaratory judgment on the terms of the Joint Operating Agreement for the Ellis Unit and an order permanently enjoining Appellant, Vastar Resources, Inc. (Vastar), from interfering with the operations of the Ellis Unit. Union Oil Company of California (Unocal) was the operator and owner of 39.34895% working interest in the Ellis Unit. Two producing wells were located on this unit. Duncan owned 30.35467% of the combined working interest rights and was a non-operator in the Ellis Unit. The remaining 30.29638% of the working interest rights in the Ellis Unit are owned by non-operators who are not parties to this lawsuit.

¶ 2 The interest of the operator and the non-operators are governed by a Joint Operating Agreement (JOA) dated September 23, 1976. The JOA is a preprinted form drafted and published by the American Association of Petroleum Landmen (AAPL) and this JOA is commonly known as an AAPL Form 610 Model Form Operating Agreement—1956. On December 19, 1997, Unocal sold and assigned its working interest in the Ellis Unit to Vastar. On February 2, 1998, Duncan received notice that Unocal had assigned its interest in the unit to Vastar. Both Vastar and Duncan under their respective interpretation of the JOA conducted elections for a new operator. Duncan's election process did not include Vastar or Unocal as Duncan believed the terms of the JOA precluded the assignor and assignee from voting. In this election, Duncan received the majority vote for the new operator of the Ellis Unit. Vastar also conducted an election allowing the non-operators and Vastar to participate. In this election, Vastar received the majority vote for the new operator.

¶ 3 A non-jury trial occurred on August 10, 1999. In order to simplify the trial, the parties stipulated as follows:

"Voting procedure and voting totals by Duncan and Vastar are not an issue. Thus, if Vastar as the Assignee of the operator UNOCAL is not permitted to vote in selection of a successor operator pursuant to paragraph no. 19 of the Ellis Unit Operating Agreement, Duncan Oil Properties, Inc. was selected as successor operator, subject to the separate issue of whether that entity had to own an interest in the Contract Area in order to be eligible or qualified to be selected as successor operator under the Operating Agreement.

If Vastar is permitted to vote in selection of a successor operator pursuant to paragraph no. 19 of the Ellis Unit Operating Agreement, Vastar Resources, Inc. was selected as successor operator."

Additionally, both parties stipulated that the language of paragraph 19 of the JOA is clear and unambiguous. After the presentation of evidence and legal argument, the trial court found that Vastar was prohibited from voting in the election of the new operator and as a result Duncan was the elected new operator of the Ellis Unit. Vastar was ordered to turn over the operations of the well to Duncan. Vastar appeals. Vastar also filed a motion requesting a stay of the trial court's judgment during the pendency of this appeal. The motion was denied. On May 8, 2000, Mid–Continent Oil & Gas Association of Oklahoma was granted leave to file an *amicus curiae* brief by the Oklahoma Supreme Court.

¶ 4 The single issue presented on appeal is whether the clear and unambiguous language of paragraph no. 19 of the JOA prohibits the operator's assignee from voting in the election for the new operator. Paragraph no. 19 provides:

"Should a sale be made by Operator of its rights and interests, the other parties shall have the right within sixty (60) days after the date of such sale, by majority vote in interest, to select a new Operator. If a new Operator is not so selected, the transferee of the present Operator shall assume the duties of and act as Operator. In either case, the retiring Operator shall continue to serve as Operator, and discharge its duties in that capacity under this agreement, until its successor Operator is selected and begins to function, but the present Operator shall not be obligated to continue the performance of its duties for more than 120 days after the sale of its rights and interest has been completed."

¶ 5 Vastar claims on appeal that it became a party to the JOA on December 19, 1997 when Unocal assigned its working interest to Vastar. Duncan concedes Vastar is a party to the JOA. Vastar contends that the phrase "other parties" includes an assignee and would allow Vastar to vote on the selection of a new operator, otherwise, in this case, 39.34895% of the working interest would not be included in the selection of the new operator by virtue of being the assignee of the operator while all the other working interest would be included. Duncan concedes that it is also an assignee to the JOA but its interest was not from the operator. Duncan argues that the phrase "other parties" means all parties to the agreement except the operator and its assignee. We do not agree.

¶ 6 The parties have cited no cases which interpret the successor operator paragraph of a JOA like this one and in particular the meaning of the phrase "other parties." We also have canvassed the case law and could not find any authority on the construction of this paragraph. However, the JOA is a contract and will be construed like any other contract. *Oxley v. General Atlantic Resources, Inc.,* 1997 OK 46, 936 P.2d 943, 945. If the terms of a contract are unambig-uous, clear and consistent, they are accepted in their plain and ordinary sense and the contract will be enforced to carry out the intention of the parties as it existed at the time it was negotiated. *K & K Food Services, Inc. v. S & H, Inc.,* 2000 OK 31, 3 P.3d 705, 708. Title 15 O.S.1991 § 157 provides that the whole of the contract is to be construed together to give effect to every part with each clause helping to interpret the others.

¶ 7 With this rule of construction in mind, we review the other provision in the contract which relates to a change in the Unit's operator. Paragraph no. 21 of the JOA provides:

"Operator may resign from its duties and obligations as Operator at any time upon written notice of not less than ninety (90) days given to all other parties. In this case, all parties to this contract shall select by majority vote in interest, not in numbers, a new Operator who shall assume the responsibilities and duties, and have the rights, prescribed for Operator by this agreement. The retiring Operator shall deliver to its successor all records and information necessary to the discharge by the new Operator of its duties and obligations."

Duncan asserts "other parties" should be construed only in the context of paragraph no. 19 and not compared with other provisions of the JOA such as paragraph no. 21 which sets forth the election process when the operator resigns. In fact, when Duncan quotes paragraph no. 21, it places [sic] after "all parties" when it quotes the language contained in this paragraph. We do not agree as a contract must be considered as a whole with effect being given to all provisions without narrowly concentrating upon some clause or language taken out of context. *Buck's Sporting Goods, Inc. v. First National Bank & Trust Co.,* 1994 OK 14, 868 P.2d 693, 698.

¶ 8 Obviously, the parties disagree on the meaning of the phrase "other parties." When provisions in a contract are susceptible of two constructions, the contract will be interpreted in a manner which is fair and

rational, rather than in a manner which would reach an inequity. *McMinn v. City of Oklahoma City*, 1997 OK 154, 952 P.2d 517, 522. Considering the contract as a whole, it is clear that the parties intended for all parties to the contract to vote by interest in order to select the new operator. Both parties agree that the operator of a unit in which a party owns an interest is an important consideration. Under paragraph no. 21, it is clear all parties including the resigning operator are allowed to vote for the new operator. It would be inequitable if a working interest owner were precluded from voting for the operator simply because the new working interest owner had obtained its interest from the operator of the unit. The equitable and logical construction of paragraph no. 19 is the phrase "other parties" is used to indicate the current operator is not allowed to vote because the current operator no longer has a working interest. This appears to be clarification language because technically some may interpret the current operator as a party to the JOA; because pursuant to the JOA, the current operator is required to continue its duties for a set period of time after assignment of its working interest. However, the assignee of the operator's working interest is now a party to the JOA as the assignee owns the working interest which is counted in the selection of the new operator. Further, in support of this interpretation, we note that the Oklahoma Supreme Court in *Oxley v. General Atlantic Resources, Inc.*, *supra*, although not addressing this precise issue, counted the assignee's vote pursuant to a JOA containing an identical paragraph no. 19. Therefore, Vastar's vote should have been included in determining the new operator for the Ellis Unit. Accordingly, the trial court's judgment is reversed and remanded for further proceedings consistent with the view expressed in this opinion.

¶9 REVERSED AND REMANDED.

¶10 GARRETT, J., dissents; and BUETTNER, J., concurs.