THIRD DIVISION
March 21, 2007

No. 1-06-1607

| | | |
|---|---|---|
| HENRY MERMELSTEIN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant - Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| MOSHE MENORA; TRI-UNITED MANAGEMENT, | ) | |
| INC., d/b/a Tri-United Companies, an Illinois | ) | |
| Corporation; SPRINGS TULSA LIMITED | ) | |
| PARTNERSHIP, an Oklahoma Limited Partnership; | ) | |
| BEDFORD APTS. LIMITED PARTNERSHIP, an | ) | |
| Oklahoma Limited Partnership; APPLE CREEK | ) | |
| LIMITED PARTNERSHIP, an Oklahoma Limited | ) | |
| Partnership; SUGERBERRY LIMITED | ) | |
| PARTNERSHIP, an Oklahoma Limited Partnership; | ) | |
| INDEPENDENCE WILLIAMSBURG L.P., a Missouri | ) | |
| Limited Partnership; KINGS RIDGE LIMITED | ) | |
| PARTNERSHIP,  a Missouri Limited Partnership; | ) | |
| QUAIL RUN/COVE LIMITED PARTNERSHIP  a | ) | |
| Missouri Limited Partnership; and SAN ANTONIO | ) | |
| SIERRA VISTA L.P.,  a Texas Limited Partnership, | ) | Honorable |
| | ) | Mary Anne Mason, |
| Defendants and Counterplaintiffs - Appellants. | ) | Judge Presiding. |

JUSTICE KARNEZIS delivered the opinion of the court:

This appeal arises from an order of the circuit court awarding plaintiff Henry

Mermelstein damages and prejudgment interest in his action for dissolution, accounting

and other relief against Moshe Menora, Tri-United Management, Inc. (Tri-United),

Springs Tulsa Limited Partnership, Bedford Apts. Limited Partnership, Apple Creek

Limited Partnership, Sugerberry Limited partnership, Independence Williamsburg L.P., Kings Ridge Limited Partnership, Quail Run/Cove Limited Partnership and San Antonio Sierra Vista L.P. Mermelstein and Menora were partners in the above limited partnerships. Mermelstein, the limited partner, filed an action seeking damages for Menora's, the general partner's, breach of his fiduciary duties to Mermelstein under the terms of the parties' partnership agreements. The court found for Mermelstein, awarded him $2,215,964.11 in damages and prejudgment interest and denied Menora's counterclaim. On appeal, Menora argues the court erred in (1) denying his counterclaim based on section 10.3 of the partnership agreements; (2) granting Mermelstein's motion *in limine* to exclude evidence of an alleged overpayment to Mermelstein pursuant to section 10.4 of the partnership agreements; (3) awarding Mermelstein his proportionate share of reimbursements Menora received from the partnership for payroll he paid to on-site management personnel; (4) ordering Menora to (a) repay Mermelstein for his proportionate share of the partnership funds Menora used to pay his legal fees in defending the suit and (b) refrain from using partnership funds for his legal defense of the case forthwith; and (5) awarding Mermelstein prejudgment interest. We affirm in part and reverse and remand in part.

Background

Menora and Mermelstein entered into a series of almost identical partnership agreements in 1991 "to invest in, acquire, hold, maintain, improve, develop, sell, exchange, operate, lease, mortgage, exchange and otherwise use for profit" eight

apartment buildings located in Oklahoma, Missouri, and Texas. Mermelstein, an operator of nursing homes, provided the approximately $8 million capital for the partnerships. Menora, a developer and manager of real estate, provided management services for the partnerships through his whollyowned Illinois company, Tri-United. Seven of the eight agreements named Menora as the general partner holding a 60% interest and Mermelstein as the class A limited partner holding a 40% interest. In the Quail Run partnership governing their Missouri property, Menora held a 55% interest and Mermelstein held a 45% interest.

Counsel for Menora drafted the agreements, which provided that the general partner, Menora, had the "exclusive authority to manage the operations and affairs of the Partnership and to make all the decisions regarding the business of the Partnership." He would receive 6% of gross rentals received by the partnership as "compensation for his management services" and 2% of gross rentals "as reimbursement for the General Partner's overhead and operating expenses." Menora had the authority, in his "sole judgment," to incur "all reasonable expenditures" on behalf of the partnership and would be reimbursed for out-of-pocket expenses incurred in the performance of his duties, "but not including [his] overhead and operating expenses." Except for the requirement that Menora had to obtain Mermelstein's approval before engaging a person in any way related to or affiliated with Menora to perform services or provide goods, the limited partner could "take no part in the conduct or control of the business of the partnership" nor act for or bind the partnership.

Accordingly, other than a yearly audit of the partnership's finances conducted by his accountant and weekly discussions with Menora, Mermelstein took no active role in the operating the partnerships, eventually making $16 million to $17 million on the partnerships.

In 1997, Mermelstein filed a complaint for a declaratory judgment against Menora, Tri-United and the partnerships seeking an accounting and other relief. In 1999, Mermelstein filed an amended complaint for dissolution, accounting and other relief. In 2003, Mermelstein filed a second amended complaint alleging, in relevant part, that, besides committing numerous accounting improprieties in managing and operating the partnerships, Menora breached the agreements by reimbursing himself from partnership funds for salaries Tri-United paid to employees providing management services on site at the various properties and improperly used partnership funds to defend himself in this litigation and other ligation between the parties.

Menora denied the charges and counterclaimed, seeking reimbursement to the partnerships for $1.2 million Mermelstein allegedly received in error pursuant to a payout under section 10.3 of the agreements. After the close of discovery but before trial, Menora moved to assert a similar claim for reimbursement based on paragraph 10.4 of the agreements. The court barred this claim pursuant to Mermelstein's motion *in limine*. By the time the case went to trial, seven of the eight partnership properties had been sold.

Following an extended bench trial, the court held, in salient part, that

4

Mermelstein was entitled to recover his proportionate share of the partnerships funds Menora received as reimbursement for salaries paid to on-site management employees. The court determined these employees were employees of Tri-United, *i.e.*, Menora's employees, and their salaries were covered by the 8% Menora received for his management services and overhead and operating expenses. The court also determined Menora improperly used partnership funds to pay his legal fees, ordered that Mermelstein recover his proportionate share of the attorney fees expended and prohibited Menora from using partnership funds to defend the actions. The court denied Menora's counterclaim. It also considered Mermelstein's posttrial motion for an award of prejudgment interest. Noting Mermelstein failed to request such relief in his complaints, the court ordered the parties to brief the issue and ultimately allowed the motion, awarding Mermelstein $358,211.67 in prejudgment interest, for a total award of $2,215,964.11. The court denied Menora's motion to reconsider and Menora timely appealed.

Analysis

The construction, interpretation, or legal effect of a contract is a matter of law, which we review <u>de novo</u>. <u>Avery v. State Farm Mutual Automobile Insurance Co.</u>, 216 Ill. 2d 100, 129, 835 N.E.2d 801, 821 (2005). Similarly, whether a contract is ambiguous is a question of law which we review *de novo*. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153-54, 821 N.E.2d 206, 214 (2004).

Each of the agreements contains a provision stating that the particular

5

agreement and the rights of the parties thereunder shall be governed and interpreted according to the laws of Missouri, Oklahoma or Texas, as applicable to each agreement. The laws of the relevant states do not materially differ in this area, requiring we interpret the partnership agreements in such a manner as to prefer a rational and probable agreement rather than an unusual, unfair or improbable agreement. Rathbun v. CATO Corp., 93 S.W.3d 771 (Mo. App. 2002); Duncan Oil Properties, Inc. v. Vastar Resources, Inc.,16 P.3d 465 (Okla. Civ. App. 2000); Illinois Tool Works, Inc. v. Harris, 194 S.W.3d 529 (Tex. App. 2006). There is no discernable public policy obstacle to enforcing the choice-of-law provisions; Missouri, Oklahoma and Texas bear a reasonable relationship to the partnerships and transactions; the issues in this case involve basic contract law; and there is no material difference between in the laws of these states. Accordingly, we will apply Missouri, Oklahoma and Texas law to the substantive issues of contract interpretation. Hubbert v. Dell Corp., 359 Ill. App. 3d 976, 982, 835 N.E.2d 113, 120 (2005).

Menora's Section 10.3 Counterclaim

Menora argues that the trial court improperly denied recovery on his counterclaim based on section 10.3(a) of the partnership agreements. Section 10.3(a) provides:

> "When and to the extent Cash Flow is distributed, it shall be distributed in the following manner: (a) the Class A Limited Partner shall first receive a sum (the 'cumulative preferred payment') equal to ten (10%) percent per annum on his

capital contributions (reduced by any capital contributions previously returned by the Partnership) on a cumulative basis, but prorated for any partial year." Mermelstein received millions of dollars in distributions pursuant to section 10.3(a). In preparing for trial on Mermelstein's action against him, Menora discovered that he did not record these distributions as reductions to Mermelstein's capital accounts. He filed a counterclaim asserting this was an error, Mermelstein's capital accounts should have been reduced by the distributions; the error resulted in over $1.2 million in overpayments to Mermelstein when the partnerships were sold; and Mermelstein should be required to return the overpayment. Mermelstein responded that the distributions were interest and not to be charged against his capital accounts. Finding section 10.3(a) unambiguous and the payments to be interest, the court denied Menora's counterclaim.

Menora argues the court erred in its interpretation of the contract because the distributions under section 10.3(a), whether considered interest or not, should have reduced Mermelstein's capital accounts pursuant to sections 8.4 of the agreements.

Section 8.4 provides in relevant part:

"A capital account shall be established for each Partner on the books of the Partnership, and there shall be credited to each Partners' capital account the amount of his initial capital contribution, any additional capital contributions and his share of profits and income of the Partnership. There shall be charged against each Partner's capital account the amount of cash and the Gross Asset

Value [subsequently defined and irrelevant to this discussion] of property distributed to each Partner and such Partner's share of any losses of the Partnership."

Menora asserts that all payments made to either partner are to be treated as "distributions" pursuant to section 8.4 and the distributions made under section 10.3(a) should, therefore, have been charged against Mermelstein's capital account.

Per section 8.4, a partner's capital account consists of the amount he has contributed and his share of the partnership profits and income, minus the amount of cash and gross asset value distributed to him and his share of partnership losses. We do not, as Menora appears to argue, read section 8.4 as requiring that *any* cash distribution, no matter from where the cash is being distributed, whether it comes from the partner's capital account or not, should reduce the partner's capital account. Logically, only cash distributed *from* a capital account should reduce that account, because the partner is receiving cash-in-hand for an amount he had on paper; ergo, the charge against the account.

Section 10.3(a) provides, in salient part, when "cash flow" is distributed, it shall be distributed first to the limited partner, who receives a sum equal to 10% per annum on his capital contributions, reduced by any capital contributions previously returned by the partnership. Then, per section 10.3(b), the remaining amount is distributed to the partners pursuant to their percentage interest in the partnership. Broadly, the agreements define "cash flow" as gross cash revenues received by a partnership on its

8

business operations, not including capital contributions, minus interest payments on loans made to the partnership and cash expenditures incurred in operating the partnership, including management fees. Essentially, it is the cash profit from operating the business, rental income minus expenses. There is no indication in the agreements that "cash flow" is kept in a capital account prior to distribution. There is, therefore, no reason why a distribution of cash flow per section 10.3(a) should operate to reduce such capital account per section 8.4.

No matter that the agreements term the section 10.3(a) 10% payment to be a "cumulative preferred payment," that 10% payment is clearly interest, paid annually by the partnership to Mermelstein on the balance of his capital contributions for the use of his capital investment funds. The parties treated it as interest; the partnerships declared it as interest on their Internal Revenue Service 1099 tax forms. This 10% is distributed from cash flow, given to Mermelstein off the top of the cash flow/profit amount, with the remainder of that profit then distributed to the partners on a percentage ownership basis. The 10% is a return on investment and, logically, would be paid into an investment account, not out of it. There is no reason that the capital accounts should be charged for something that did not originate from those accounts, the only exception being the existence of a shortfall at the end of the year and the partners having to cover the partnership's losses. The capital accounts receive capital contributions, profits and losses. Cash flow seems to be a profit, and thus should be paid into a capital account. Section 10.3's cash flow "distribution" is not the type of

"cash distribution" contemplated by section 8.3's requirement that cash distributions be charged against a capital account. We affirm the court's denial of Menora's counterclaim.

Barring of Menora's Section 10.4 Claim

Menora argues that the trial court erred in granting Mermelstein's motion *in limine* to bar Menora's assertion that he incorrectly paid Mermelstein $1.2 million pursuant to section 10.4 of the partnership agreements.[1] He asserts that, even though the discovery process was closed and the trial date set within a matter of weeks, the trial court nevertheless could have reopened discovery and granted a relatively brief continuance. We will not interfere with a trial court's ruling on discovery matters unless there is manifest abuse of discretion. Shaheen v. Advantage Moving & Storage, Inc., 369 Ill. App. 3d 535, 860 N.E.2d 375, 380 (2006). To find an abuse of discretion, we must find that no reasonable person would take the position adopted by the trial court. Taxman v. First Illinois Bank of Evanston, 336 Ill. App. 3d 92, 97, 782 N.E.2d 803, 807 (2002).

Menora did not plead the section 10.4 theory as a counterclaim nor seek leave to file it as a counterclaim during the more than eight years the case was open. Instead, he raised it orally during a mediation hearing some seven weeks before trial, alleging he

---

[1] We will not belabor the details of what the payment errors entailed beyond that they involved the order of allocation among the partners of net cash proceeds from the sale of the partnership properties pursuant to section 10.4 of the agreements.

had just discovered the payment errors. The trial court granted Mermelstein's motion *in limine* to bar reference to this undisclosed theory, finding the theory separate from that claimed in Menora's section 10.3 counterclaim and Menora's argument that he had disclosed the theory during discovery through a named accounting expert unpersuasive. The disclosure of the expert during discovery in no way mentioned that he would testify to a section 10.4 miscalculation and the fact that Mermelstein could have discovered the miscalculation himself by looking through the partnership accounts made no difference to the court, especially in light of the fact that those accounts were in Menora's control and Menora himself did not discover the alleged error until shortly before trial.

While the issue of reopening discovery and postponing the trial date further is admittedly close, there is nothing in the record to suggest that the trial court's action was an abuse of discretion. Under the facts of this case, the trial court could have reasonably determined that the time for discovery, which at that point had been open for eight years, was more than ample for Menora to have discovered and disclosed his section 10.4 theory in a timely manner and he was foreclosed from presenting his theory now the time had passed. There is nothing in the record to suggest that the court barred reference to the theory as a discovery sanction. Accordingly, we affirm the trial court's grant of the motion *in limine*.

Reimbursement for On-Site Managers' Salaries

Menora argues that the trial court erred in finding Mermelstein was entitled to

recover his proportionate share of the reimbursements Menora paid himself from the partnership assets for salaries Tri-United paid to management employees (leasing agents, assistant managers and managers) working at the eight partnership properties. Menora, as the general partner, paid all workers at each of the properties through a central payroll account maintained by Tri-United. He then reimbursed himself from partnership funds for those salaries, considering those salaries to be the type of expense subject to reimbursement under section 14.4 of the agreements. Section 14.4 provides in relevant part:

"The General Partner shall be reimbursed for out-of-pocket expenses incurred in the performance of duties hereunder, including but not limited to all leasing commissions and finders fees for securing tenants, but not including General Partner's overhead and operating expenses."

Mermelstein respondes that the provision for reimbursement of 2% of gross rentals for the general partner's overhead and operating expenses contained in section 14.1 encompassed those salaries, and any additional reimbursement was improper. Section 14.1 provides in relevant part:

"The General Partner shall receive compensation for his management services rendered hereunder equal to six (6%) percent of gross rentals received by the Partnership. The General Partner shall also receive a sum equal to two (2%) percent of such gross rentals as reimbursement for the General Partner's overhead and operating expenses."

The trial court found the provisions of the partnership governing Menora's reimbursement were unambiguous, the on-site management employees' salaries fell under section 14.1's 8% compensation and reimbursements provisions, and any additional reimbursement taken by Menora was improper. Accordingly, the court awarded Mermelstein $1,061,797.00 as his proportionate share of the salary reimbursements Menora received.

Menora argues that section 14.2 provides him with the express authority to incur expenses in hiring personnel and for reimbursement of those expenses. Section 14.2 provides in relevant part:

"The General Partner is hereby granted the right, power and authority to do on behalf of the Partnership all things which, in its sole judgment, are necessary, proper or desirable to carry out the aforementioned duties and responsibilities, including but not limited to the right, power and authority to incur all reasonable expenditures and obligations; to employ and dismiss from employment any and all employees, agents, independent contractors, real estate managers, brokers, attorneys and accountants."

The provisions of 14.2 are unambiguous: they provide for Menora's authority to perform certain acts on behalf of the partnership, namely incurring expenses and hiring personnel. The terms of section 14.2 do not, however, provide the appropriate method of reimbursement for expenses incurred in performing those actions.

Section 14.4 does provide for such reimbursement. It provides unambiguously

for reimbursement to Menora for expenses he incurred on behalf of the partnership, except for those expenses already reimbursed as the "General Partner's overhead and operating expenses" under section 14.1. Mermelstein's argument to the contrary notwithstanding, the salaries of the on-site managements employees were not "overhead and operating expenses." These were not Menora's employees. They were employees of the partnership. While it is true that their salaries were paid through Tri-United's payroll system, these employees performed their work at the various partnership property locations, and there is no evidence that they devoted any of their time to Menora's business interests outside of the partnership. The on-site management employees were clearly working on behalf of the partnership, not on behalf of Menora, and should be paid by the partnership, not by Menora. Their salaries were not part of the general partner's overhead and operating expenses but rather were out-of-pocket expenses incurred on behalf of the partnership, expenses for which Menora could be reimbursed.

The salaries of all employees working at the various properties, from the custodial staff to the property manager, are paid from the Tri-United payroll account. Mermelstein's counsel stated during oral arguments that all of these salaries fall under section 14.1's reimbursement provision as Menora's "overhead and operating expenses." This interpretation of the agreement is so improbable, it reinforces our determination that the on-site management employees' salaries are not overhead and operating expenses. It is difficult to imagine that the parties intended 2% of gross

rental income to sufficiently reimburse Menora for the entirety of day-to-day operating expenses of the partnership properties. The more logical construction is that the parties intended Menora's expenses associated with his management services at the Tri-United office in Skokie (*i.e.*, utilities, accounting and secretarial services, etc.) to be reimbursed as overhead and operating expenses under section 14.1 and the expenses related to the operation of the partnership properties (notably those of the on-site management personnel) to be reimbursed as out-of-pocket expenses under section 14.4. Accordingly, we find that Menora was entitled to be reimbursed for the on-site salaries and reverse the court's decision in favor of Mermelstein on this issue.

Prejudgment Interest

Citing <u>Gaiser v. Village of Skokie</u>, 271 Ill. App. 3d 85, 96, 648 N.E. 2d 205, 213-14 (1995), Menora argues that the trial court erred in awarding prejudgment interest to Mermelstein because Mermelstein did not expressly seek prejudgment interest in his original, amended, or second amended complaint and should therefore be barred from recovery. Because this is a procedural issue, Illinois, rather than Missouri, Oklahoma or Texas, law applies. <u>Boersma v. Amoco Oil Co.</u>, 276 Ill. App. 3d 638, 644-45, 658 N.E.2d 1173, 1180 (1995). Issues relating to the sufficiency of pleadings raise questions of law and are reviewed *de novo*. <u>Joseph v. Chicago Transit Authority</u>, 306 Ill. App. 3d 927, 930, 715 N.E.2d 733, 736 (1999).

This district's pleading standard for prejudgment interest is clear: unless a plaintiff pleads or requests prejudgment interest in the complaint, there can be no

award. Gaiser, 271 Ill. App. 3d at 96, 648 N.E. 2d at 213-14. "[T]he law requires that the proof and the judgment must be consistent with the pleadings. Plaintiff, having failed to amend his complaint seeking prejudgment interest, was not entitled to it." Gaiser, 271 Ill. App. 3d at 96, 648 N.E. 2d at 213-14. The Fifth District held similarly in Englemann v. Standard Mutual Insurance Co., 4 Ill. App. 3d 55, 280 N.E.2d 240 (1972), in which the court disposed of the matter of prejudgment interest "without further comment because the plaintiff's complaint omit[ted] to make any claims for interest." Englemann, 4 Ill. App. 3d at 57, 280 N.E.2d at 241. (Contrast with Libco Corp. v. Roland, 99 Ill. App. 3d 1140, 1147, 426 N.E.2d 309, 314 (1981), in which the Fourth District found the "proper procedure for obtaining prejudgment interest to be to move for it after verdict and before judgment.")

There is no question Mermelstein did not specifically request prejudgment interest in his original, amended, or second amended complaint. While he did request "such other and further relief as the court deems just and equitable," this broad language is insufficient to meet the pleading standards of this district. Because the pleadings were insufficient, we need not reach the issue of whether Mermelstein would have been awarded prejudgment interest under the substantive laws of Missouri, Oklahoma, and Texas. Accordingly, we reverse the trial court's award of prejudgment interest to Mermelstein.

Attorney Fees

Menora argues the trial court erred in ordering him to repay Mermelstein for the

16

attorney fees paid by the partnership on Menora's behalf in defending this case and prohibiting Menora from using partnership funds to pay such attorney fees in the future. Menora used partnership assets of the Quail Run partnership to pay his attorney fees in defending the action brought by Mermelstein, effectively requiring Mermelstein to pay 45% of his adversary's legal costs.[2] Menora asserts he was entitled to have the partnership pay for his attorney fees for this case pursuant to section 14.8 of the partnership agreements.

Section 14.8 provides in relevant part:

"The Partnership shall indemnify and hold harmless the General partner and its Partners, employees and agents * * * from and against any loss, expense, damage or injury suffered or sustained by them by reason of any act, omissions or alleged acts or omissions arising out of their activities on behalf of the Partnership, including but not limited to any judgment, award, settlement, reasonable attorneys' fees and other costs or expenses incurred in connection with the defense of any actual or threatened action, proceeding or claim and including any payments made by the General Partner to any of its Partners, acts or omissions upon which such actual or threatened action, proceeding or claim are based were in good faith and were not performed or omitted

---

[2] Menora's choice of the Quail Run partnership as the source for his indemnification strikes this court as petty given this is the only partnership in which Mermelstein held 45% rather than 40% of the partnership. Use of the Quail Run partnership assets was clearly meant to increase the percentage by which Mermelstein would be obligated to underwrite Menora's legal fees.

fraudulently or in bad faith or as a result of wanton and willful misconduct or gross negligence by such Indemnified Parties."

The terms of the provision are unambiguous: absent fraud, bad faith, wanton and willful misconduct or gross negligence, Menora is indemnified by the partnership for his activites "on behalf of the partnership." This indemnification specifically includes "reasonable attorneys' fees" incurred in defense of an action against him.

Mermelstein's action was for breach of contractual and fiduciary duties. Mermelstein argues that when Menora breached those duties, he was in fact acting on his own behalf, and not that of the partnership, and therefore not entitled to indemnification under the agreements. However, when the trial court characterized Menora's conduct in managing the affairs of the partnership, it specifically found that, although there were breaches of his fiduciary duty, Menora did not conceal, misrepresent or seek to take advantage of his partner. The record does not show otherwise. Mermelstein has failed to show that the breaches resulted from anything other than accounting errors or misinterpretations of Menora's rights and duties under the agreements. Accordingly, Mermelstein has failed to show that Menora performed the challenged activities on his own behalf and not on behalf of the partnership.

Given the court's finding that Menora did not conceal, misrepresent or seek to take advantage of his partner, Mermelstein also failed to demonstrate that Menora's conduct fit into one of the categories disqualifying him from indemnification (fraud, bad faith, willful and wanton misconduct or gross negligence). In the absence of any

findings of such disqualifying conduct or failure to act on behalf of the partnership, Menora is indemnified by section 14.8 of the partnership agreement for his reasonable attorney's fees in defending this action.  Reading the agreement as a whole, there is nothing limiting a general partner's indemnification solely to cases in which he is defending against third parties.  Although the resulting situation, in which Mermelstein is effectively underwriting the legal costs of his opponent, may be anomalous, it is nonetheless supported by the plain unambiguous language of the partnership agreement.

Mermelstein argues that Menora cannot be indemnified against his own negligence.  Under Missouri law, there must generally be clear and unequivocal terms to indemnify against negligence.  Nusbaum v. City of Kansas City, 100 S.W.3d 101, 105 (Mo. 2003).  The terms are clear and unequivocal in the agreements:  absent proof of fraud, bad faith, wanton and willful misconduct or gross negligence, Menora is indemnified in defending his negligence, if any, in any action in which he acted on behalf of the partnership.  Accordingly, we reverse the trial court's order regarding Menora's use of partnership funds to pay his attorney fees and remand on this issue.

For the reasons stated above, we affirm the circuit court's denial of Menora's section 10.3(a) counterclaim and its grant of Mermelstein's motion *in limine* to exclude Menora's section 10.4 claim.  We reverse the court's finding that Menora erred in reimbursing himself the management employees' salaries and its award to Mermelstein of his proportionate share of the reimbursements Menora received; its

19

award of prejudgment interest to Mermelstein; and its finding that Menora improperly used partnership funds to pay his attorney fees, its award to Mermelstein of his proportionate share of the funds Menora used to pay those fees and its order that Menora refrain from using partnership funds to defend this action. We remand for further proceedings in light of the above.

Affirmed in part and reversed in part; cause remanded.

GREIMAN, J., concurs.

CUNNINGHAM, J., dissenting in part.

JUSTICE CUNNINGHAM, dissenting in part:

I respectfully dissent from the majority on the sole issue of indemnification of Menora for his attorney fees in defending this action.

I would affirm the trial court's ruling barring the use of partnership assets by Menora to finance his defense against his own mismanagement, probable negligence and breach of fiduciary duty. A review of the language of section 14.8 of the partnership agreement leads me to a different construction of its meaning than that of the majority. It states in relevant part:

> "The partnership shall indemnify and hold harmless the
> General Partners and their employees and agents *** from
> and against any loss, expense, damage or injury suffered or
> sustained by them by reason of any act, omissions ***
> arising out of their activities *on behalf of the partnership*
> (emphasis added), including but not limited to any
> judgement, award, settlement, reasonable attorney's fees
> and any other costs or expenses incurred in connection with
> the defense of any actual or threatened action, proceeding
> or claim *** provided that the acts, or alleged acts or
> omissions upon which such actual or threatened action,
> proceeding or claim are based were in good faith and were
> not performed or omitted fraudulently or in bad faith or as a

21

> result of wanton and willful misconduct or gross negligence
>
> *** ."

I believe that the intent of section 14.8 is to indemnify Menora against actions by third parties when he is acting on behalf of the partnership. Implicit in a partnership agreement is a fiduciary duty between partners to act in the best interest of the partnership. Cronin v. McCarthy, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (1994). Under a partnership, a fiduciary relationship is created whereby the partner assuming control of the business is obligated to manage it in the interest of all the partners. Rizzo v. Rizzo, 3 Ill. 2d 291, 301, 120 N.E.2d 546, 552 (1954). Where one is the senior or managing partner, his obligation to deal fairly and openly and disclose completely is heightened. Cronin, 264 Ill. App. 3d at 524, 637 N.E.2d 688. The record shows that Menora was the managing partner with the expertise and Mermelstein was a silent partner who relied upon Menora to provide appropriate management for the enterprise. Menora's obligation to properly manage the business free from negligence and uphold his fiduciary duty is inherent in the partnership agreement. Indemnification of the managing partner for acts committed by him against the partnership is not a reasonable construction of the agreement in this case since the trial court has found a breach of fiduciary duty by the managing partner.

It is significant that the trial court found that Menora acted in a manner that breached his fiduciary duty to the partnership. For example, with respect to the allocation of assets following the sale of the Oklahoma property, the court found that

Menora used a method that financially benefitted himself to Mermelstein's detriment. He offered no satisfactory explanation for choosing that method. Additionally, Menora conceded that he had engaged in certain other irregularities regarding the assets of the partnership. This was certainly not in the interest of the partnership or Mermelstein. Allowing Menora to use the partnership assets in this manner is contrary to the implied duty of care and loyalty which is inherent in the agreement. While it is true the court did not make a specific finding of fraud, bad faith, willful misconduct or gross negligence on the part of Menora, it did find that Menora breached his fiduciary duties to the partnership and Mermelstein and also that he breached the partnership agreement. Further, the trial court found that Menora acted in a way contrary to Mermelstein's interest and that Mermelstein was entitled to relief.

I disagree with the majority's conclusion that the breach of duty is insufficient to bar Menora's indemnification. The language of the agreement states that partners should be indemnified for "activities on behalf of the partnership." A partner's breach of duty, loyalty or care to the partnership cannot be construed as acting "on behalf of the partnership" and therefore should not be financed by the partnership assets. Thus, in my view, construction of the language of the agreement does not provide indemnification against a legal challenge by one partner against another where the challenged partner is not acting in a manner consistent with his fiduciary obligation.

Additionally, I interpret differently the specific language of the partnership agreement cited by Menora in support of his assertion that the language is clear,

23

unambiguous and provides him with the right to use the partnership's assets to defend himself against his own mismanagement of those assets. The contract is ambiguous if it is susceptible to more then one interpretation. Ford v. Dovenmuehle Mortgage, Inc., 273 Ill. App. 3d 240, 244, 651 N.E.2d 751, 754 (1995). Ambiguous contracts are generally construed against the drafter. Duldulao v. St. Mary of Nazareth Hospital Center, 115 Ill. 2d 482, 493, 505 N.E.2d 314, 319 (1987). Mermelstein's challenge to Menora's use of the partnership funds to defend himself in this way provides another fact from which to infer that such a construction was not intended by the parties when they entered into the agreement.

The primary goal in construing a contract is to give effect to the intent of the parties. Premier Title Company v. Donahue, 328 Ill. App. 3d 161, 164, 765 N.E.2d 513, 516 (2002). Mermelstein's objection to the use of his money by Menora to defend against legitimate allegations of mismanagement by Menora underscores that each partner interprets the language and intent of the partnership agreement differently on that point. The disparate interpretations by Mermelstein and Menora underscore the ambiguous nature of the indemnity provision. Under these circumstances, I cannot construe the language of the agreement as providing Menora with a right to use more of the partnership assets to defend against his own inappropriate management and wrongdoing. Construing the language against the drafter, Menora, would yield a different result than that reached by the majority. Construing the language of the agreement so that Mermelstein in effect is obligated to pay a portion of Menora's legal

fees has a unique impact on the trial court's finding. Indemnifying Menora dilutes the compensation to which the trial court found Mermelstein is entitled and rewards Menora for breaching his fiduciary duties and the partnership agreement. I think this could not and should not be the interpretation of section 14.8 of the partnership agreement. Under the facts of this case, I would affirm the trial court and bar Menora from using partnership assets to finance his defense.